CRAIN, J.
*455 In these consolidated actions seeking relief under the Louisiana Public Records Act, the plaintiff appeals a judgment rendered after a trial on the merits. The defendants answered the appeal. We reverse in part and affirm in part.
FACTS AND PROCEDURAL HISTORY
Mary E. Roper was the parish attorney for the City of Baton Rouge/Parish of Baton Rouge until the Metropolitan (Metro) Council terminated her employment on September 10, 2014. In the months leading up to the council's vote, Roper submitted a total of sixteen public records requests to the council, the mayor pro tempore , and several individual council members, generally seeking a copy of any emails, texts, or similar communications exchanged during the previous six years that pertained to Roper.[1] Several of the requests were withdrawn shortly after they were sent, including four requests made in May 2014, and four requests sent the following month in June.
On August 12, 2014, Roper filed suit against the Metro Council, requesting declaratory and injunctive relief aimed at the council's efforts to terminate her employment. Roper served requests for production of documents ("discovery") on the same people who received the previous requests for records, including Chandler Loupe, as Mayor Pro Tempore ; Casey Cashio, as council administrator/treasurer; and four council members: Jewel E. "Trae" Welch III, C. Denise Marcelle, Anthony "Buddy" Amoroso, and Juan Manuel *456 "John" Delgado. The discovery sought essentially the same information requested in the previously withdrawn public records requests.
The next day, August 13, 2014, Roper forwarded another set of requests for public records to Loupe, Welch, Marcelle, Amoroso, and Delgado. Like the previous requests, Roper again requested copies of communications between those individuals and others about Roper during the previous six years.[2] Shortly thereafter, similar requests were sent to Cashio, as council administrator/treasurer.[3] These requests for public records, sometimes collectively referred to as the "August requests," are the subject of this litigation.
On August 19, 2014, Murphy Foster, the attorney representing the Metro Council in the declaratory judgment litigation, sent a letter to Roper's attorney, Wade Shows, confirming that "[t]he people at the Metro Council responsible for responding to your client's Public Records Requests are working feverously to pull the requested documents together." Foster further advised that "[b]ecause the scope of the requests is so broad and the potential documents responsive to the requests are so voluminous, it may take another day or so before we can make them available."
The search of the public records was handled by Eric Romero, the City/Parish's interim Information Services Director. Because of the uniformity of the search terms, the individual council members' records were searched by one global inquiry, which was completed on August 18, 2014. A separate search was conducted for the requests sent to the parish administrator, and it was completed on August 20, 2014. Romero delivered the results of the searches to the parish attorney's office.
On August 25, 2014, Foster provided about 800 emails to Shows. The production of the emails was formally styled as a response to the discovery in the declaratory judgment proceeding. Less than two weeks later, the district court dismissed Roper's declaratory judgment suit, and on September 10, 2014, the council voted to terminate Roper's employment as parish attorney.
No further communications were exchanged about the August requests until over two months later, when Roper sent an email to Foster on October 22, 2014, inquiring about the status of the responses.[4] Foster said he would notify Roper when the records were ready and advised that he had only received the August requests directed to Loupe and Amoroso. The pertinent communications thereafter are set forth in the following timeline:
10/30/14: Jennifer Sims, an attorney in Foster's office, emailed Roper and advised they were compiling the responsive documents and anticipated responses would be *457 ready, at least in part, the following week.
11/5/14: Sims notified Roper that additional documents for Loupe, Delgado, and Amoroso should be partially ready later that week. Sims also advised that her office did not have a copy of the August requests sent to Marcelle and Welch. Roper responded and sent Sims a copy of the August requests for Marcelle and Welch.
11/6/14: In a letter emailed to Roper, Sims explained the public records search produced thousands of documents, and each must be reviewed to determine if it is a public record and, if so, whether it is privileged or otherwise exempt from production. Sims also explained that the review process had to be repeated for some records due to a defective jump drive. Roper was invited to review the documents vetted to date. Sims also emailed Shows and advised that 1,932 emails were available for inspection or reproduction.
11/7/14: Sims notified Shows that additional records were available for inspection or production.
11/10/14: Sims notified Shows that additional documents were available for inspection and that Sims was still waiting on a response as to when Roper or Shows would like to inspect the documents.
Roper did not inspect the available records. Instead, on November 10, 2014, she filed suit against the City/Parish and Cashio, and two days later against Loupe, Welch, Marcelle, Amoroso, and Delgado, alleging they arbitrarily and capriciously withheld the requested public records. Roper sought a writ of mandamus directing the defendants to produce the records, and requested awards for actual damages, civil penalties, attorney fees, and all costs, all pursuant to the Louisiana Public Records Act.[5]
On November 26, 2014, Foster notified Shows that "[a]ll non-exempt records that are responsive to Ms. Roper's numerous public records requests are available for inspection and/or copying." Foster requested Shows contact him to arrange a mutually convenient date and time for the inspection or copying.
The trial began on December 4, 2014. After receiving testimony from several witnesses, the trial court recessed the matter. About one week later, Roper went to Foster's office and picked up a flash drive containing 2,213 pages of responsive documents. Roper, citing testimony indicating the search had produced significantly more documents, requested the trial court appoint an expert to review the entirety of the documents produced by the search to determine whether any withheld documents were exempt from production. The trial court granted the request and appointed Michael A. Patterson to review the documents and render a report.
While the trial was still in recess, Foster's office provided Patterson with a copy of all documents generated by the search terms contained in Roper's requests, a total of about 57,000 documents. After removing the documents already provided to Roper, Patterson and his staff, over the course of three months, reviewed the remaining documents to determine whether any should be produced. At the conclusion of his review, Patterson determined that 9,000 of the remaining documents were responsive, non-exempt, and should be produced.
*458 The trial court then gave Foster's office an opportunity to review the 9,000 documents identified by Patterson. After that review, defense counsel surmised that almost all of those documents were either duplicates of documents that had already been produced, or were not responsive to the requests, not public records, or were exempt by the attorney-client privilege. According to the defendants, only about 40 documents in the group of 9,000 were responsive, non-exempt, and not previously produced. The trial court reviewed the documents and agreed with the defendants' assessment. The defendants produced the additional documents that were responsive and non-exempt, and, in an apparent effort to show full disclosure, also produced the documents they contended were duplicates, non-responsive, or not public records. The defendants withheld only the documents purportedly exempt by the attorney-client privilege.
Roper requested an order directing the defendants to furnish a written notification of their determinations as to why each of the withheld records was not produced, including a reference to the basis under law which the custodian determined excepted each record, or part thereof, from inspection, copying, or reproduction. On October 5, 2015, the defendants provided an itemized list of the withheld documents, and later supplemented the list on October 29, 2015, to state the basis for withholding each document.
The trial resumed on November 3, 2015, and concluded on November 5, 2015. Loupe, Delgado, Welch, and Amoroso each testified that upon receipt of the August requests for public records, they provided the requests to either the parish administrator or to Foster's office to prepare a response. Marcelle offered conflicting testimony, initially stating that she turned the matter over to the parish attorney's office, but later, when pressed, testified she could not remember if she routed the request to the parish attorney and confirmed she did not give it to Foster's office. Marcelle also acknowledged that when Roper emailed the August request to her, Marcelle responded with an email calling Roper's actions "harassment," apparently because the email was sent to Marcelle's place of employment. When Marcelle was subsequently served with Roper's petition, she threw the pleading on the floor in front of the deputy sheriff who served her.
After taking the matter under advisement, the trial court issued written reasons for judgment finding:
1. The defendants provided Roper with all non-exempt records; therefore, her request for a writ of mandamus is moot;
2. The defendants did not arbitrarily or capriciously fail to respond to the requests for public records, except for Marcelle, against whom the trial court imposed a civil penalty of $12,000.00, plus attorney fees of $19,707.50, and one-sixth of the court costs;
3. The defendants unreasonably failed to provide the notice required by Louisiana Revised Statute 44:32D, and, based on that finding, the trial court assessed a civil penalty of $4,000.00 against each of the defendants;
4. Roper failed to prove any actual damages; and
5. The defendants are not entitled to reimbursement of the costs incurred to comply with the August requests.
A judgment was signed on February 4, 2016, denying the request for a writ of mandamus, awarding Roper the relief identified above, together with legal interest thereon, and casting Roper with five-twelfths (5/12) of the court costs and court-appointed expert fees. The remaining court costs were allocated one-sixth (1/6)
*459 to Marcelle and one-twelfth (1/12) to each of the remaining defendants. Roper appealed, and the defendants answered the appeal, collectively seeking review of all of the aforementioned rulings by the trial court.
DISCUSSION
Overview of Public Records Act
The right of access to public records is guaranteed by Article XII, Section 3 of the Louisiana Constitution, which provides that "no person shall be denied the right to ... examine public documents, except in cases established by law." The Louisiana Public Records Act, codified at Louisiana Revised Statute 44:1, et seq. , similarly mandates that "any person of the age of majority may inspect, copy, or reproduce any public record," except as otherwise provided by law. See La. R.S. 44:31B(1). Because the right of access to public records is a fundamental right, guaranteed by the Constitution, access can be denied only when a law specifically and unequivocally provides otherwise. Deshotels v. White , 16-0889 (La. App. 1 Cir. 8/16/17), 226 So.3d 1211, 1218 (en banc ), writ denied , 17-1565 (La. 12/5/17), 231 So.3d 628. Any doubt as to the public's right of access must be resolved in favor of the public's right to see. See Deshotels , 226 So.3d at 1218.
The custodian of the record shall present it to any person of the age of majority who so requests. La. R.S. 44:32A. While the record generally must be made available "immediately," the Act recognizes that some reasonable delay may be necessary to compile, review, and, when necessary, redact or withhold certain records that are not subject to production. See La. R.S. 44:33A & B(1); La. R.S. 44:35A. Within five business days of the request, however, the custodian must provide a written "estimate of the time reasonably necessary for collection, segregation, redaction, examination, or review of a records request." See La. R.S. 44:35A. If the custodian fails to provide that notice, the requesting party may institute proceedings for the issuance of a writ of mandamus, injunctive, or declaratory relief. See La. R.S. 44:35A.
The Act requires a written notification when a custodian determines that a requested record is not subject to production. This notification, sometimes referred to hereinafter as the "exemption notice," is mandated by Louisiana Revised Statute 44:32D, which provides:
In any case in which a record is requested and a question is raised by the custodian of the record as to whether it is a public record, such custodian shall within three days, exclusive of Saturdays, Sundays, and legal public holidays, of the receipt of the request, in writing for such record, notify in writing the person making such request of his determination and the reasons therefor. Such written notification shall contain a reference to the basis under law which the custodian has determined exempts a record, or any part thereof, from inspection, copying, or reproduction.
Enforcement of the Act is primarily governed by Louisiana Revised Statute 44:35, which grants a successful plaintiff the right to obtain an order directing the custodian to produce the public record, and permits an award of attorney fees and costs. See La. R.S. 44:35B and D. In certain circumstances, a plaintiff may also recover "actual damages" and civil penalties under Subsection 44:35E(1), which provides:
If the court finds that the custodian arbitrarily or capriciously withheld the requested record or unreasonably or arbitrarily failed to respond to the request *460 as required by R.S. 44:32, it may award the requester any actual damages proven by him to have resulted from the actions of the custodian except as hereinafter provided. In addition, if the court finds that the custodian unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32 it may award the requester civil penalties not to exceed one hundred dollars per day, exclusive of Saturdays, Sundays, and legal public holidays for each such day of such failure to give notification.
As indicated, this provision identifies two triggers that give rise to a claim for monetary relief: (1) an arbitrary or capricious withholding of the requested record, and (2) a failure "to respond to the request as required by R.S. 44:32," which this court has repeatedly interpreted to mean a failure to provide the exemption notice required by Subsection 44:32D. See Deshotels, 226 So.3d at 1219-20 ; Capital City Press, L.L.C. v. Louisiana State University System Board of Supervisors, 13-2001 (La. App. 1 Cir. 12/30/14), 168 So.3d 727, 743, writ denied , 15-0209 (La. 4/17/15), 168 So.3d 401 ; Revere v. Reed, 95-1913 (La. App. 1 Cir. 5/10/96), 675 So.2d 292, 296. These two triggering events-the arbitrary or capricious withholding of the record, and the arbitrary or unreasonable failure to provide the exemption notice-are the only grounds for recovering actual damages under the Act. An award of civil penalties, being even more restricted, is authorized only when a custodian unreasonably or arbitrarily fails to provide the exemption notice. See La. R.S. 44:35E(1); Deshotels, 226 So.3d at 1219-20 ; Capital City Press, L.L.C., 168 So.3d at 743 ; Revere, 675 So.2d at 296. This basic framework of the relief authorized by Subsection 44:35E(1) is essential to a proper application of the statute with respect to several issues presented in this appeal.
In six assignments of error, Roper asserts the trial court (1) erred in dismissing her request for a writ of mandamus as moot, (2) erred in failing to find the defendants acted in an arbitrary or capricious manner, (3) abused its discretion in the awards of civil penalties, (4) erred in failing to award actual damages, (5) abused its discretion in failing to cast the defendants with the entirety of the court costs and the cost of the court-appointed expert, and (6) abused its discretion in failing to award attorney fees from each defendant. In their answer, the defendants assert the trial court erred in (1) finding they failed to comply with Subsection 44:32D, (2) finding Marcelle acted arbitrarily or capriciously in responding to the August requests, (3) imposing an additional civil penalty, attorney fees, and one-sixth of the court costs against Marcelle based on that finding, (4) assessing the defendants with a portion of the fee of the court-appointed expert, and (5) denying the defendants' reconventional demand seeking reimbursement for the cost to compile and review the requested records.
Request for Writ of Mandamus
In her first assignment of error, Roper contends the trial court erred in finding the defendants produced all of the requested public records, thus rendering moot her request for a writ of mandamus.
The trial court's determination that the defendants produced all non-exempt documents responsive to the August requests is a factual determination subject to the manifest error standard of review. Under the manifest error standard, the appellate court does not decide whether the factfinder was right or wrong; rather it is required to consider the entire record to determine whether a reasonable factual basis exists for the finding, and whether the finding is manifestly erroneous or clearly wrong.
*461 Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC, 14-2592 (La. 12/8/15), 193 So.3d 1110, 1116.
Romero confirmed in his testimony that searches were made of the email database maintained by the Metro Council utilizing the parameters and search terms identified by Roper in the August requests. The entire set of documents produced by the searches, less any duplicates initially identified by the software used to conduct the searches, was delivered to the parish attorney's office. Because the August requests also extended to any private devices or emails, Loupe, Amoroso, Delgado, and Welch confirmed they searched any private devices or accounts that might have been used for council business and produced any responsive communications to Foster's office. Marcelle testified that her council email address was the only account she used for council business. Over the course of approximately three months, the defendants' attorneys reviewed these documents and produced or made available all records that counsel believed were responsive and non-exempt.
The court-appointed expert, Patterson, also reviewed the entire set of documents produced by the search of the public records as well as the records found by the council members on their private devices or in private email accounts. After those records were reviewed by Patterson, and again by the defendants' attorneys, the trial court determined that only a small number of additional documents needed to be produced. Those records were produced, along with numerous additional documents the trial court determined were not responsive but were nevertheless voluntarily produced by the defendants.
Roper argues that "[o]ther documents have not been provided by the custodians due to their lack of knowledge of how to access them," citing testimony from Loupe. Loupe testified he searched his private email accounts and turned over copies of any emails that were responsive to the August requests. However, one email account was closed about two years prior to his receipt of the August requests, so that account was not accessible. There was no evidence that Loupe ever used that account for council purposes or, if he did, that any emails sent or received on the account could be accessed and searched at the time he received the August requests. Roper cites no other evidence suggesting the defendants have not produced any nonexempt documents that are responsive to the August requests. Based upon our review of the evidence, the trial court's factual finding that the defendants produced all responsive records is not manifestly erroneous.[6]
In light of that finding, a writ of mandamus would serve no purpose. Courts will not decide abstract, hypothetical, or moot controversies, or render advisory opinions with respect to such controversies. Cat's Meow, Inc. v. City of New Orleans Through Department of Finance, 98-0601 (La. 10/20/98), 720 So.2d 1186, 1193 ; Thibodeaux v. Field , 07-1418, 2008 WL 2065236, p. 2 (La. App. 1 Cir. 5/2/08). An issue is moot when a judgment or decree on that issue has been deprived of practical significance or made abstract or purely academic. Id. Because all of the requested, non-exempt records were produced prior to the completion of the trial, the trial court did not err in finding the request for a writ of mandamus to be moot and denying the request on that basis. See *462 Thibodeaux , 2008 WL 2065236 at p. 2. This assignment of error is without merit.[7]
Arbitrary and Capricious Claim
The trial court found that each of the defendants, except for Marcelle, "was not arbitrary or capricious in responding" to the requests for public records. In making this determination, the trial court considered the efforts undertaken by each of the defendants to locate and produce responsive records.
If the court finds a custodian arbitrarily or capriciously withheld the requested record, it may award the requester any actual damages proven by him to have resulted from the actions of the custodian. La. R.S. 44:35E(1). The terms "arbitrary and capricious" mean willful and unreasoning action, absent consideration and in disregard of the facts and circumstances of the case. Toups v. City of Shreveport, 10-1559 (La. 3/15/11), 60 So.3d 1215, 1217. When there is room for two opinions, an action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed an erroneous conclusion has been reached. Id. The test for determining whether an action was arbitrary or capricious is whether the action taken was "without reason." Aswell v. Division of Administration, State, 15-1851 (La. App. 1 Cir. 6/3/16), 196 So.3d 90, 94. The determination of whether a party's conduct is arbitrary or capricious is a factual finding that may not be disturbed on appeal unless manifestly erroneous. See Calogero v. Safeway Insurance Company of Louisiana, 99-1625 (La. 1/19/00), 753 So.2d 170, 173.
The trial court heard testimony from numerous witnesses describing the efforts to produce the requested records. The search of the public records data base was handled by Romero, the City/Parish's interim Information Services Director. Because of the uniformity of the search terms, the individual council members' records were searched by one global inquiry, which was completed on August 18, 2014. A separate search was conducted for the requests sent to the parish administrator, and it was completed on August 20, 2014. Romero then delivered the results of the searches to the parish attorney's office.
Loup, Delgado, Welch, and Amoroso described their efforts taken in response to the August request, including searches of their private devices or email accounts. Pursuant to standard procedure, Loupe routed the August requests to the parish attorney's office to search the public data base and prepare a response. Loupe searched his personal email accounts and provided Foster with copies of any responsive communications. Searches of his cellphone and I-Pad found nothing responsive. Delgado sent Roper's request to the parish attorney's office shortly after his receipt. The following week, he compiled any responsive information under his personal control and provided those documents to Foster's office. He searched his cell phone, a computer used at his private office, and personal email accounts. He also searched his social networking accounts and found nothing responsive to the request.
Welch likewise asked the parish attorney's office to handle the August request, and personnel in that office said they had received several of the same requests and would respond. Welch searched his personal *463 device and found nothing responsive. He did not know why Foster's office did not have the request sent to him when Roper contacted Foster's office in October 2014. Amoroso searched his personal devices with the help of a private information-technology consultant on September 24, 2014, and provided copies of any responsive communication to Foster's office in December 2014. According to Amoroso, some confusion was caused by Roper's withdrawal of her previous requests and the dismissal of her lawsuit against the Metro Council, but when Foster's office contacted him, Amoroso cooperated and provided copies of the communications he located.
Foster provided about 800 emails to Shows on August 25, 2014. Additional emails were made available on November 6, 7, and 10, 2014. On November 26, 2014, Foster notified Shows that all non-exempt records responsive to Roper's requests were available for inspection and/or copying.
For these defendants, the trial court concluded the evidence did not establish an arbitrary or capricious delay in production of the requested records, explaining:
An examination of the evidence and circumstances surrounding this case establish that defendants in this matter acted in good faith and with a rational basis for their actions. Defendants did not ignore the records requests or assert privileges for items that are deemed public records under the statute. Rather, defendants immediately began compiling and reviewing documents. The evidence presented also illustrated that defendants contributed substantial resources to responding and in making [a] good faith effort to comply with all statutory obligations.
* * *
[T]he record is replete with evidence that any delay in defendants responding to plaintiff's requests was due to the time required to compile and review voluminous, requested records and the inherent confusion caused by numerous requests submitted by plaintiff on multiple occasions, accompanied by her withdrawal of certain of those requests. Moreover, not only did plaintiff's requests duplicate the discovery requests she submitted in the Declaratory Judgment Action, but her six public records requests overlapped each other substantially. Thus, the search conducted by defendants returned duplicate documents, each of which had to be reviewed.
* * *
It took [d]efendants less than three months to complete their review of approximately 32,000 documents responsive to [p]laintiff's request. During this time, plaintiff was advised of the delay and the reason for the delay. This time period was certainly reasonable where it took the independent expert even longer to conduct the very same review.... Therefore, this Court finds that any delay in their response to plaintiff's public records request did not rise to the level of arbitrary and capricious as set forth in Louisiana jurisprudence.
Arguing this finding is manifestly erroneous, Roper contends the evidence proves the defendants failed to produce approximately 9,000 responsive documents that were identified by Patterson, the court-appointed expert. However, after those documents were reviewed by the defendants' attorneys, it was established to the trial court's satisfaction that, subject to very few exceptions, the documents identified by Patterson had already been produced, were not responsive, or were privileged. As to the handful of additional documents that were subject to production, *464 defense counsel explained that the second search, which produced the documents reviewed by Patterson, generated some additional documents, a variance attributed by counsel to the broad scope of Roper's request and the technical limits of the search software. Patterson acknowledged the search was extremely complicated and cumbersome, and conceded that even in his review "there were errors made." Roper points to nothing incriminating in the additional responsive documents that would suggest any motive or reason for the defendants to knowingly withhold them. In a search of this magnitude-seeking all electronic communications using any one of twenty identified terms, sent or received between multiple people over the course of six years-minor errors are not unexpected and, more to the point, are not conclusive evidence of arbitrary or capricious conduct.
We are likewise not persuaded by Roper's contention that the defendants were arbitrary or capricious for not using abbreviations for "parish attorney" in the database search. Roper specifically defined the parameters of the search, including the twenty search terms to be used. Roper did not identify any of the abbreviations that she now suggests should have been used by the defendants. We cannot conclude the defendants arbitrarily or capriciously withheld documents by failing to expand the scope of the search beyond the terms specifically identified by Roper.
The trial court also observed that the court-appointed expert needed about three months to complete his review of the documents, approximately the same amount of time the defendants and their attorneys needed to complete the process. When asked if a three-month delay was reasonable to complete a review of the documents, Patterson replied:
Well, I can say it took us that long. We worked on it, as you could tell from the bills, pretty steadily to get through it. I don't believe it's possible to have done it any quicker than that.
After a thorough review of the evidence, we find no manifest error in the trial court's determination that Delgado, Welch, Amoroso, Loupe, and the City/Parish did not arbitrarily or capriciously withhold or otherwise delay production of the requested public records. This assignment of error is without merit.
Civil Penalties Based on Failure to Provide Exemption Notice
We next consider the defendants' contention that the trial court erred in finding they unreasonably failed to provide the exemption notice required by Subsection 44:32D. Pursuant to that provision, when "a question is raised by the custodian of the record as to whether it is a public record, such custodian shall within three days ... notify in writing the person making such request of his determination and the reasons therefor." The written notification must contain "a reference to the basis under law which the custodian has determined exempts a record, or any part thereof, from inspection, copying, or reproduction." La. R.S. 44:32D. If the custodian unreasonably or arbitrarily failed to provide the notice, the court may award the requesting party damages and a civil penalty not to exceed one hundred dollars per day, exclusive of Saturdays, Sundays, and legal public holidays for each such day of such failure to give notification. See La. R.S. 44:35E(1); Deshotels, 226 So.3d at 1219-20 ; Capital City Press, L.L.C. , 168 So.3d at 743 ; Revere, 675 So.2d at 296.
The defendants do not dispute they withheld documents from the production based on their determination the documents were exempt from production under the attorney-client privilege. The defendants *465 also do not dispute that no written notification of this determination was provided until, at the earliest, August 11, 2015, when the defendants filed a memorandum disclosing that responsive documents had not been produced for this reason. The defendants later provided more detailed explanations itemizing the documents, and reasons for withholding same, in notifications provided in September and October of 2015. These notifications came one full year after the forwarding of the August requests and, even more noteworthy, at least eight months after the defendants completed their review of the documents.
The defendants offered no evidence explaining their failure to provide the exemption notice in a timely manner. Instead, they argue no notice was required because there was no "question" the records were exempt. Noting the statute mandates the notice when "a question is raised by the custodian of the record as to whether it is a public record," the defendants propose the notice is only required when a custodian withholds a responsive record because he has some "question" that it may be exempt. However, according to the defendants, no notice is required if, as in this case, the custodian withholds a record because he "affirmatively concluded without question " that the document is exempt or is not a public record. (Emphasis added.) [11] In other words, under the defendants' interpretation of Subsection 44:32D, they were not required to provide any notice they withheld records, because they were certain the records were exempt. This proposed interpretation has no reasonable basis in the statute's language.
Legislation is the solemn expression of legislative will; thus, the interpretation of legislation is primarily the search for legislative intent. In re Succession of Boyter , 99-0761 (La. 1/7/00), 756 So.2d 1122, 1128. The starting point for interpretation of any statute is the language of the statute itself, as the text of the law is the best evidence of legislative intent. See La. R.S. 1:4 and 24:177B(1); Rando v. Anco Insulations, Inc., 08-1163 (La. 5/22/09), 16 So.3d 1065, 1075. Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. La. R.S. 1:3. A statute must be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intent of the legislature in enacting it. Harrah's Bossier City Investment Company, LLC v. Bridges, 09-1916 (La. 5/11/10), 41 So.3d 438, 446-47. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. Civ. Code art. 10. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. Civ. Code art. 12.
Although the introductory phrase of Subsection 44:32D prefaces its application to instances where "a question is raised by the custodian" about the document's classification, the defendants' proposed interpretation over-emphasizes the word "question" and ignores the balance of the provision, that requires the custodian to notify the requesting party of the custodian's "determination" and the reasons therefor, including a reference to the law which the custodian "has determined" exempts a record, or any part thereof, from inspection, copying, or reproduction. This language confirms the notice is required when a custodian "has determined" a record is not subject to production, regardless of whether the custodian is certain of his determination or has some "question" about it.
*466 Subsection 44:32D ensures a requesting party will be informed when a document is not produced because a custodian determined it is not subject to production. If never advised of that information, absent some independent knowledge of the document's existence, the requesting party would have no way of knowing the custodian made this determination and withheld the document. Unaware of the determination, the requesting party would have no reason to pursue judicial review of the determination.
The legislature has recognized that it is essential to the operation of a democratic government that the people be made aware of all exceptions, exemptions, and limitations to the laws pertaining to public records. La. R.S. 44:4.1A. Consistent with that premise, Subsection 44:32D ensures that a party requesting a public record will be made aware of any determination by the custodian that the record is either not a public record or is otherwise exempt from production. The defendants failed to provide that notification in a timely manner. Where, as here, that failure persisted for several months after the defendants completed their review of the documents, the trial court was not manifestly erroneous in concluding the defendants unreasonably failed to provide the notification required by Subsection 44:32D. This assignment of error by the defendants is without merit.
The trial court assessed each of the defendants with a civil penalty of $4,000.00 based on their failure to provide the exemption notice. In separate assignments of error, Roper claims that amount is too low, while the defendants assert the award should be reversed or reduced.
Subsection 44:35E(1) authorizes a civil penalty not to exceed $100.00 per day, exclusive of Saturdays, Sundays, and legal public holidays for each such day of such failure to give notification. An award of civil penalties under this provision is discretionary with the trial court and is reviewed on appeal under an abuse-of-discretion standard. Innocence Project New Orleans v. New Orleans Police Department, 13-0921 (La. App. 4 Cir. 11/6/13), 129 So.3d 668, 674.
In its written reasons, the trial court found the defendants unreasonably delayed giving the exemption notice for approximately 400 days. The court assessed a penalty of $10.00 per day for that period of time to arrive at the total penalty of $4,000.00 per defendant. Roper claims the daily rate should be higher than $10.00, while the defendants contend the trial court erred by including weekends and legal holidays in determining the length of delay.
Appellate courts review judgments, not reasons for judgment. Wooley v. Lucksinger, 09-0571 (La. 4/1/11), 61 So.3d 507, 572. While the written reasons provide insight to the trial court's method for arriving at the amount of the penalty, the judgment awarded a lump sum of $4,000.00 against each defendant. The defendants failed to provide the exemption notice for several months, which under the parameters of Subsection 44:35E(1), permits a penalty much greater than that imposed by the trial court. On the other hand, the evidence does not suggest conduct so egregious to render the assessed penalty abusively low. The trial court's award of $4,000.00 is well within the discretionary range authorized by Subsection 44:35E(1). Focusing on the award, rather than the trial court's method of calculation, we find no abuse of discretion. These assignments of error are without merit.
Damages
Roper next contends the trial court erred in denying her claim for actual *467 damages. Under Subsection 44:35E(1), when a custodian arbitrarily or capriciously withheld a requested record, or unreasonably or arbitrarily failed to provide the notice required by Subsection 44:32D, the requesting party may recover "actual damages proven by him to have resulted from the actions of the custodian." The trial court found the defendants did not timely provide the exemption notice and Marcelle arbitrarily or capriciously failed to provide responses to the request. To recover compensation under Subsection 44:35E(1), Roper had to prove her alleged damages were caused by these actions. The trial court, as the factfinder, was charged with determining whether Roper met that burden of proof by a preponderance of the evidence. See Schwartzberg v. Guillory, 16-0753 (La. App. 1 Cir. 2/17/17), 213 So.3d 1266, 1271. Causation is a factual finding that should not be reversed on appeal absent manifest error. Bouchon v. Walkenford, 16-1232 (La. App. 1 Cir. 4/20/17), 218 So.3d 1100, 1103.
According to Roper, the defendants' actions caused her to lose her job as parish attorney and forced her into early retirement, costing her over $1,200,000.00 in retirement benefits worth approximately $600,000.00 in present day value. She also claims to have endured stress, anxiety, depression, and insomnia.
Roper offered no proof that any action or inaction by the defendants in their response to her public records requests caused her to lose her job. When asked how a more complete response prior to the September 10, 2014 Metro Council meeting would have changed the council's vote to terminate her employment, Roper could only offer, "I certainly would have felt like I could have been prepared more for the hearing to have the evidence that I needed to back up what I was saying." However, in the thousands of emails and other communications provided to Roper before and during this litigation, she has not identified one example of a communication that "back[s] up" her claim. Roper failed to point out any emails that, if made available prior to the September 10, 2014 council meeting, would have resulted in the Metro Council voting to retain her as parish attorney.
Roper's claim for mental anguish rested solely on her testimony, which was not specific to the emotional distress, if any, distinctly caused by the defendants' failure to provide the exemption notice, or Marcelle's conduct in responding to the August request. Instead, Roper's testimony focused on the stress caused by the litigation, both the declaratory judgment action and the current litigation, and, more particularly, statements made about her in pleadings and open court. While she generally claimed the defendants' actions in response to her request for public records caused her anxiety, Roper struggled to meaningfully distinguish between that stress and the stress caused by more significant events occurring during the same period of time, including the loss of her job and the dismissal of her declaratory judgment action, which Roper described as "devastating." She also suffered stress from her receipt of a criminal summons and the execution of a search warrant at her home, as well as embarrassing media coverage of those events. The emotional anxiety associated with those events was not caused by the defendants' failure to provide the exemption notice or by Marcelle's actions in responding to the August request.
Roper's claim of mental anguish resulting from the defendants' response is further undermined by her apparent lack of interest in promptly reviewing the emails as they were made available. She was notified several times that documents were *468 available for review; however, she made no attempt to review those emails and, instead, filed suit. Her apparent apathy toward the documents made available prior to suit, together with the difficulty in distinguishing any compensable degree of stress caused by the defendants' response to her requests, was summarized in the following exchange at trial:
Q. If you are suffering this mental anguish for not getting these documents, all these documents have been made available to you prior to the time you actually picked them up, as early as a month before, are you sure that the mental anguish that you claim to have been suffering from [in this] case really is not embedded or caused by the additional matters that we have discussed on your cross examination today?
A. The additional matters you discussed [have] caused me stress, yes. This has also caused me stress, so it is not to say that there is no other stress in my life. Obviously, there is.
The trial court concluded Roper failed to meet her burden of proof for the recovery of damages under Subsection 44:35E(1). Based upon our review of the entirety of the evidence, that determination is not manifestly erroneous. This assignment of error is without merit.
Additional Civil Penalty against Marcelle
All parties assign errors to the portion of the judgment addressing Marcelle, including the trial court's finding that she was arbitrary or capricious in responding to the August requests and the award of an additional civil penalty against her based on that finding.
In review, the trial court found all of the defendants, including Marcelle, unreasonably failed to provide the exemption notice required by Subsection 44:32D. On that basis, the trial court assessed a civil penalty of $4,000.00 against each defendant, including Marcelle, which we have affirmed. The trial court also declared Marcelle "was arbitrary and capricious in her failure to timely produce any responses" to the August requests and, based on that finding, imposed an additional civil penalty of $12,000.00 against her.
The Public Records Act authorizes a civil penalty in only one instance: when the custodian unreasonably or arbitrarily fails to provide the exemption notice required by Subsection 44:32D. See La. R.S. 44:35E(1); Deshotels, 226 So.3d at 1219-20 ; Capital City Press, L.L.C., 168 So.3d at 743 ; Revere, 675 So.2d at 296. The Act does not authorize a civil penalty on any other grounds, including the arbitrary or capricious withholding of the requested records. The trial court thus erred as a matter of law by imposing an additional civil penalty of $12,000.00 against Marcelle based on her failure "to produce any responses" to the August requests. That award must be reversed.
Attorney Fees and Court Costs
The trial court awarded Roper attorney fees of $19,707.50 against Marcelle. The defendants contend the award should be reversed because Roper's claim for a writ of mandamus was moot by the time of trial, whereas Roper contends the trial court erred by not awarding attorney fees against all of the defendants.
Subsection 44:35D provides:
If a person seeking the right to inspect, copy, or reproduce a record or to receive or obtain a copy or reproduction of a public record prevails in such suit, he shall be awarded reasonable attorney fees and other costs of litigation. If such person prevails in part, the court may in its discretion award him reasonable attorney fees or an appropriate portion thereof.
*469 This provision requires a mandatory award of reasonable attorney fees in favor of a plaintiff who prevails in an action under the Act; however, if the plaintiff only prevails in part, an award of attorney fees is discretionary with the court. See Aswell, 196 So.3d at 94.
Although a request for a writ of mandamus may be rendered moot by the production of the requested records, an award of attorney fees is still permissible under Subsection 44:35D if the production occurred after suit was filed. See Aswell, 196 So.3d at 94 ; Thibodeaux v. Field, 09-0241, 2009 WL 2225443, p. 3 (La. App. 1 Cir. 7/27/09). Here, although some records were provided or made available before Roper filed suit, the defendants do not dispute that additional responsive records were provided after she filed suit. The mootness of Roper's mandamus claim did not preclude an award of attorney fees.
Because Roper prevailed on some, but not all, of her claims, an award of attorney fees was discretionary with the trial court under Subsection 44:35D. Appellate review of such discretionary decisions is conducted under the "abuse of discretion" standard of review. Quality Environmental Processes, Inc. v. IP Petroleum Company, Inc., 16-0230 (La. App. 1 Cir. 4/12/17), 219 So.3d 349, 375, writ denied , 17-00915 (La. 10/9/17), 227 So.3d 833. Generally, an abuse of discretion results from a conclusion reached capriciously or in an arbitrary manner. Id.
The trial court chose to award attorney fees only against Marcelle, citing her conduct in response to Roper's requests. While the testimony was conflicting, the evidence suggests Marcelle failed to route the August request though the usual channels for a response, sent Roper an email accusing her of harassment, and, when served with Roper's petition, angrily threw the pleading on the floor in the presence of the deputy sheriff. In contrast, the other defendants testified they promptly routed the August requests to the proper personnel for a response, checked any personal devices and accounts for communications that might be responsive to the requests, and generally cooperated in the efforts to respond to the requests. The evidence demonstrates a distinct difference in the actions undertaken by Marcelle, in comparison to the other defendants, that amply supports the trial court's discretionary decision to impose an award of attorney fees against her only.[8]
Both parties argue the amount of the award should be modified. A trial court has much discretion in fixing an attorney fee, and its award will not be modified on appeal absent an abuse of that discretion. Crawford v. Blue Cross Blue Shield of Louisiana, 99-2503 (La. App. 1 Cir. 11/3/00), 770 So.2d 507, 518, writ denied, 00-3267 (La. 2/16/01), 786 So.2d 98. Roper's total attorney fees through the trial date were $118,245.00. The trial court awarded $19,707.50 of that amount, representing one-sixth of the total, against Marcelle. In making the award, the trial court noted that most of the requested documents *470 were provided or made available to Roper prior to the suit, yet she chose not to review the information and filed suit instead.
Arguing the amount should be lower, the defendants contend the hourly rate charged by Roper's attorneys exceeds the limit allowed by Subsection 44:35F, which provides that an "award" of attorney fees "shall not exceed the amounts approved by the attorney general for the employment of outside counsel." The defendants' emphasis on the hourly rate charged by Roper's attorneys fails to recognize that the lump sum awarded by the trial court is a substantial reduction in the total amount of attorney fees incurred by Roper. The trial court awarded Roper less than 20% of her actual attorney fees, and the defendants failed to establish that any further reduction pursuant to Subsection 44:35F is required. Under these circumstances, the award does not require any further reduction pursuant to Subsection 44:35F. The trial court's attorney fee award does not constitute an abuse of discretion. These assignments of error are without merit.
In similar assignments of error, both parties assert the trial court erred in the allocation of court costs. The trial court assessed five-twelfths (5/12) of the court costs, including Patterson's fee, to Roper, one-sixth (1/6) to Marcelle, and one-twelfth (1/12) to each of the remaining defendants. Roper contends the defendants should be cast with all costs, while the defendants argue no portion of Patterson's fee should be allocated to them, because his appointment was requested by Roper and ultimately proved to be unnecessary.
The trial court may render judgment for costs, or any part thereof, as it may consider equitable, and its assessment of costs will not be reversed on appeal in the absence of an abuse of discretion. La. Code Civ. Pro. art. 1920 ; Gillio v. Hanover American Insurance Company, 16-0640 (La. App. 1 Cir. 1/31/17), 212 So.3d 588, 595, writ denied, 17-0393 (La. 4/24/17), 219 So.3d 1098. While the general rule is that the party cast in judgment should be assessed with court costs, the trial court may assess costs in any equitable manner and against any party in any proportion it deems equitable, even against the party prevailing on the merits. Bourg v. Cajun Cutters, Inc., 14-0210 (La. App. 1 Cir. 5/7/15), 174 So.3d 56, 73, writs denied , 15-1306, 151253 (La. 4/4/16), 190 So.3d 1201, 1205. Taxable costs include the reasonable fee and expenses of a court-appointed expert. See La. Code Civ. Pro art. 192B; La. Code Evid. art. 706A.
Roper prevailed on some of her claims, and the defendants successfully defended other claims. Given the mixed results on the merits, we find no abuse of discretion in the trial court's allocation of costs. These assignment of errors are without merit.
Reconventional Demand
In the final assignment of error, the defendants assert the trial court erred in denying the relief requested in their reconventional demand, specifically their request for the reasonable costs to access, review, and produce the requested documents, together with an award of attorney fees. The defendants sought to recover costs of $23,147.00 purportedly incurred to retrieve and review the requested emails, with most of that expense consisting of hours billed by attorneys and paralegals conducting the review.[9]
*471 In relevant part, Subsection 44:32C(3) provides, "[N]o fee shall be charged for examination or review to determine if a record is subject to disclosure, except as may be determined by a court of competent jurisdiction." We interpret this language as vesting the trial court with discretion to award a fee to the custodian for the time and expense incurred to examine or review the requested records to determine if they are subject to disclosure. The trial court's decision in that regard will not be reversed on appeal absent an abuse of discretion. See Quality Environmental Processes, Inc., 219 So.3d at 375. Although Roper's requests for public records were broad and generated a voluminous amount of documents, we cannot say the trial court abused its discretion in failing to award a fee for the cost to review the documents, particularly where the defendants failed to provide the exemption notice required by Subsection 44:32D. Further, because Roper prevailed in part in this matter, we likewise find no abuse of discretion in the trial court's refusal to award attorney fees to the defendants pursuant to Subsection 44:35E(2).
CONCLUSION
The award of a civil penalty in the amount of $12,000.00 against C. Denise Marcelle is reversed. In all other respects, the February 4, 2016 judgment is affirmed. Costs of this appeal in the amount of $14,773.00 are allocated one-half (1/2) to Mary E. Roper and one-half (1/2) to the City of Baton Rouge/Parish of East Baton Rouge; Casey Cashio in his official capacity as Council Administrator-Treasurer for the City of Baton Rouge/Parish of East Baton Rouge; J. Chandler Loupe, in his official capacity as Mayor Pro Tempore, East Baton Rouge Parish Metropolitan Council; Juan Manual Delgado, in his official capacity as Councilman, East Baton Rouge Parish Metropolitan Council; Jewel Welch III, in his official capacity as Councilman, East Baton Rouge Parish Metropolitan Council; C. Denise Marcelle, in her official capacity as Councilwoman, East Baton Rouge Parish Metropolitan Council; and Anthony Amoroso, in his official capacity as Councilman, East Baton Rouge Parish Metropolitan Council.
REVERSED IN PART; AFFIRMED IN PART.
Pettigrew, J. Concurs
GUIDRY, J., Dissents in part and concurs in part and assigns reasons for dissent in part.
GUIDRY, J., dissenting in part.
I dissent from that portion of the majority opinion that affirms the award of attorney fees assessed only against Councilwoman Marcelle. The majority finds that Ms. Roper prevailed on some, but not all, of her claims and that the award of attorney fees was at the trial court's discretion; however, Ms. Roper prevailed on those claims against all of the defendants and not just Councilwoman Marcelle. Therefore, to hold that Councilwoman Marcelle alone should be punished for the wrongdoings of the entire Council is clearly an abuse of discretion, and as such, I would find the trial court erred in only levying the award of attorney fees against her.
The trial court's determination that Councilwoman Marcelle's conduct was arbitrary and capricious is only relevant for awarding actual damages and civil penalties. See La. R.S. 44:35(E)(1). Moreover, the plain language of La. R.S. 44:35(E)(2), read in pari materia with La. R.S. 44:35(E)(1), mandates that upon finding that a custodian acted "unreasonably or arbitrarily," the custodian can only be held personally liable for actual damages .
*472 Additionally, with respect to costs, Councilwoman Marcelle is no more responsible for those costs than the other parties, as her actions that were found to be arbitrary and capricious, if that is relevant to the costs inquiry, did not relate to the documents reviewed by Patterson. Therefore, I additionally dissent from that part of the majority opinion that affirms singling out Councilwoman Marcelle for the amount of costs assigned to her by the trial court.

The initial requests sent to the mayor pro termpore and the council members requested copies of "all documents and records since August 1, 2008, having been used ... in the conduct ... of any [public] business ... including ... emails ... text messages, written correspondence ... messages and notes, including those documents and records contained on private computers and private cell phones" that were sent to or received by seven identified individuals: Chandler Loupe, Jewel E. "Trae" Welch III, C. Denise Marcelle, Anthony "Buddy" Amoroso, Juan Manuel "John" Delgado, Gregory Rome, and Jack K. Whitehead Jr. The requests sought any such communications that contained any one of nineteen identified search terms.

The requests expanded the number of people in the "sent to or received from" list to ten individuals, adding Lon Norris, Ronnie Edwards, Ryan Heck, and William Daniel to the original list of six. The requests also modified the search terms slightly and included the following twenty terms: "Mary Roper," "Ms. Roper," "Mrs. Roper," "Roper," "Parish Attorney," "Jack Whitehead," "Mr. Whitehead," "Whitehead," "Greg Rome," "Mr. Rome," "Gregory Rome," "Rome," "mediator," "Lon Norris," "Lon," "Norris," "Eiad Odeh," "Eiad," "Odeh," and "retirement."

The request sent to Cashio has four additional search terms: "Ronnie," "Ronnie Edwards," "William," and "William Daniel."

During the interim period, Roper forwarded another request for public records to the Metro Council on September 16, 2014, that, when processed, generated 90,000 documents. That request is not at issue in this proceeding.

See La. R.S. 44:1-41. The six suits filed by Roper were consolidated into one proceeding.

Roper did not assign any error to the trial court's determination that the documents not produced based on the attorney-client privilege were exempt from production and were properly withheld.

Although the claim for mandamus relief is moot, Roper's claims for compensatory damages and other monetary relief under Section 44:35 are distinct causes of action that were not rendered moot by the production of the public records. See Thibodeaux, 2008 WL 2065236 at p. 2.

The trial court made a specific finding that Marcelle's actions rose to the level of an "arbitrary or capricious" failure to respond to the requests. We recognize the evidence sufficiently distinguishes Marcelle's conduct from the other defendants to support the trial court's discretionary award of attorney fees against Marcelle; however, we pretermit consideration of whether Marcelle's conduct constituted an arbitrary or capricious withholding of the requested records. That specific finding is essential only to Roper's claim for actual damages under Subsection 44:35E(1). Having already affirmed the denial of Roper's damage claim based on a lack of causation, we need not further consider the legal elements of that claim.

Although the judgment does not address these claims, silence in a judgment as to any issue that was placed before the trial court is deemed a rejection of the claim. Ciolino v. First Guaranty Bank, 12-2079 (La. App. 1 Cir. 10/30/13), 133 So.3d 686, 696 n.7.