McCLENDON, J.
In this mandamus action, the defendant appeals the trial court judgment that granted, in part, the plaintiff's requests for public records and awarded the plaintiff attorney fees and costs. The plaintiff answered the appeal seeking a modification of the judgment, alleging that the trial court failed to order the production of all documents as requested, failed to award damages and penalties, and erred in its calculation of attorney fees. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL HISTORY
This case arises out of a dispute over certain public record requests (PRRs) that the plaintiff, Terri Lewis Stevens, submitted to the defendant, St. Tammany Parish Government (the Parish).[1] Ms. Stevens's mandamus claims are related to a separate action she filed against the Parish regarding drainage problems on her property in Dove Park Road Subdivision in St. Tammany Parish.[2] In her Petition for Mandamus and Attorney's Fees, filed on April 1, 2015, Ms. Stevens prayed that writs of mandamus issue, ordering the Parish to produce documents in eight separate PRRs that Ms. Stevens alleged were either improperly withheld or not produced. She also requested damages, civil penalties, attorney fees, and costs.
The mandamus hearing was originally set for May 21, 2015, but the matter was reset and then continued pending mediation between the parties. Mediation did not occur, and, on September 3, 2015, the Parish filed a motion for summary judgment seeking the dismissal of Ms. Stevens's claims. Following a hearing, the trial court denied the motion for summary judgment as to all but one of the PRRs.[3]
*460 As to Ms. Stevens's remaining claims for mandamus, the trial court held a three-day trial, after which the matter was taken under advisement. On August 31, 2016, the trial court issued its written reasons for judgment and, on September 7, 2016, signed its judgment. The trial court dismissed Ms. Stevens's claims as to two of the PRRs, but found that she was entitled to the issuance of a writ of mandamus with regard to the five remaining PRRs. The trial court also denied Ms. Stevens's claims for civil penalties and held that, by agreement of the parties, the issues of damages regarding one of the PRRs and of attorney fees were held open to be set for hearing upon motion of either party.
Both parties filed motions for a new trial. After a status conference, the trial court found, and the parties agreed and stipulated, that there were additional matters to be included in the trial court's judgment before it was a complete and final judgment ready for appeal. Accordingly, on October 13, 2016, the motions were granted, in part, and the September 7, 2016 judgment was vacated.
Thereafter, Ms. Stevens filed a motion to fix attorney fees, costs, and damages, which was set for hearing. The Parish opposed the motion. Following the hearing and after supplemental briefing, the trial court, on February 10, 2017, issued Supplemental Reasons for Judgment. On February 27, 2017, the trial court signed its judgment that dismissed two of Ms. Stevens's PRRs; granted her mandamus relief with regard to five PRRs, ordering the Parish to produce or allow inspection of the requested documents in the Parish's possession in accordance with the court's compliance plan; denied Ms. Stevens's requests for damages; and awarded Ms. Stevens $20,000.00 in attorney fees and $1,646.09 in costs. The trial court's extensive and thorough reasons for judgment are incorporated herein and attached for further reference. See Attachment A and Attachment B.
After the denial of the motions for new trial filed by both parties, the Parish filed a suspensive appeal, and Ms. Stevens answered the appeal. The Parish contends that the trial court erred in issuing a writ of mandamus as to the five PRRs and in its legal conclusion that Ms. Stevens was denied access to public records. It also maintains that the trial court abused its discretion in awarding Ms. Stevens attorney fees and court costs. In her answer to the appeal, Ms. Stevens raises several issues, including the dismissal of two of her PRRs, the denial of her motion for new trial, the application of an alleged improper burden of proof, the failure of the trial court to address certain issues, the lawfulness of the court's compliance plan, the denial of damages and penalties, and the amount of attorney fees awarded.
APPLICABLE LAW
Article XII, § 3 of the Louisiana Constitution provides that "[n]o person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law." Moreover, the right of access to public records is a fundamental right guaranteed by LSA-Const. art. XII, § 3 of the Louisiana Constitution, and whenever there is any doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right of access.
*461 New Orleans Bulldog Society v. Louisiana Society for the Prevention of Cruelty to Animals, 16-1809 (La. 5/3/17), 222 So.3d 679, 683 ; Landis v. Moreau, 00-1157 (La. 2/21/01), 779 So.2d 691, 694. The legislature has codified this right in Louisiana's Public Records Law, LSA-R.S. 44:1, et seq.[4]
The right to examine records in the Public Records Law is found in LSA-R.S. 44:31, which provides:
A. Providing access to public records is a responsibility and duty of the appointive or elective office of a custodian and his employees.
B. (1) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person of the age of majority may inspect, copy, or reproduce any public record.
(2) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person may obtain a copy or reproduction of any public record.
(3) The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian.
The legislature, in the Public Records Law, sought to guarantee, in the most expansive and unrestricted way possible, the right of the public to inspect and reproduce those records which the laws deem to be public. Angelo Iafrate Const., L.L.C. v. State ex rel. Dept. of Transp. and Development, 03-0892 (La.App. 1 Cir. 5/14/04), 879 So.2d 250, 254, writ denied, 04-1442 (La. 9/24/04), 882 So.2d 1131. There was no intent on the part of the legislature to qualify, in any way, the right of access. As with the constitutional provision, the Public Records Law should be construed liberally, and any doubt must be resolved in favor of the right of access. Id. ; Landis, 779 So.2d at 694-95.
The right of access to public records is fundamental; therefore, access may be denied only when the law specifically and unequivocally denies access. Hilliard v. Litchfield, 01-1987 (La.App. 1 Cir. 6/21/02), 822 So.2d 743, 746. All exceptions, exemptions, and limitations to the laws pertaining to public records and their disclosure pursuant to the Public Records Law must be provided for in the Law or in the Louisiana Constitution. See LSA-R.S. 44:4.1[5] ; Angelo Iafrate Const., L.L.C., 879 So.2d at 254. Therefore, it follows that any exemption to the Public Records Law is in derogation of the public's right to be reasonably informed and must be narrowly interpreted. Id. ; Times Picayune Pub. Corp. v. Board of Sup'rs of Louisiana State University, 02-2551 (La.App. 1 Cir. 5/9/03), 845 So.2d 599, 605, writ denied, 03-1589 (La. 9/5/03), 852 So.2d 1044.
When doubt exists about the right to access certain records, the doubt must *462 be resolved in favor of the public's right to see. A claim of annoyance, embarrassment, oppression, or undue burden or expense is not enough to overcome the public's right of access to public records. In re Kemp, 45,028 (La.App. 2 Cir. 3/3/10), 32 So.3d 1050, 1054, writ denied, 10-0755 (La. 6/25/10), 38 So.3d 338 (citing Copeland v. Copeland, 07-0177 (La. 10/16/07), 966 So.2d 1040 ).
The custodian of the record shall present it to any person of the age of majority who so requests. LSA-R.S. 44:32A. While the record generally must be made available "immediately," the Public Records Law recognizes that some reasonable delay may be necessary to compile, review, and, when necessary, redact or withhold certain records that are not subject to production. See LSA-R.S. 44:33[6] ; Roper v. City of Baton Rouge/Parish of East Baton Rouge, 16-1025 (La.App. 1 Cir. 3/15/18), 244 So.3d 450, 459. Within five business days of the request, however, the custodian must provide a written "estimate of the time reasonably necessary for collection, segregation, redaction, examination, or review of a records request." See LSA-R.S. 44:35A[7] ; Roper, 244 So.3d at 459-60.
The Public Records Law requires a written notification when a custodian determines that a requested record is not subject to production. This notification is mandated by LSA-R.S. 44:32D, which provides:
In any case in which a record is requested and a question is raised by the custodian of the record as to whether it is a public record, such custodian shall within three days, exclusive of Saturdays, Sundays, and legal public holidays, of the receipt of the request, in writing for such record, notify in writing the person making such request of his determination and the reasons therefor.
*463 Such written notification shall contain a reference to the basis under law which the custodian has determined exempts a record, or any part thereof, from inspection, copying, or reproduction.
Enforcement of the Public Records Law is primarily governed by LSA-R.S. 44:35. If the person seeking the right to inspect or to receive a copy of the public record prevails in his enforcement suit, the court shall award him reasonable attorney fees and other litigation costs. If such person prevails in part, the court may in its discretion award him reasonable attorney fees or an appropriate portion thereof. LSA-R.S. 44:35D. In certain circumstances, a plaintiff may also recover actual damages and civil penalties under LSA-R.S. 44:35E(1), which provides:
If the court finds that the custodian arbitrarily or capriciously withheld the requested record or unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32, it may award the requester any actual damages proven by him to have resulted from the actions of the custodian except as hereinafter provided. In addition, if the court finds that the custodian unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32 it may award the requester civil penalties not to exceed one hundred dollars per day, exclusive of Saturdays, Sundays, and legal public holidays for each such day of such failure to give notification.
The first sentence of LSA-R.S. 44:35E(1) provides for actual damages if the custodian arbitrarily or capriciously withheld the requested record or failed to respond. In contrast, the trigger for a discretionary award of civil penalties in the second sentence is the failure of the custodian to properly respond to a requester within the three-day statutory period. The trial court must also find that the custodian's failure to respond to the requester was unreasonable or arbitrary. Deshotels v. White, 16-0889 (La.App. 1 Cir. 8/16/17), 226 So.3d 1211, 1219 (en banc ), writ denied, 17-1565 (La. 12/5/17), 231 So.3d 628. See also LSA-R.S. 44:32D; Capital City Press, L.L.C. v. Louisiana State University System Bd. of Sup'rs, 13-2001 (La.App. 1 Cir. 12/30/14), 168 So.3d 727, 743-44, writ denied, 15-0209 (La. 4/17/15), 168 So.3d 401.
It is well established that the examination of records or requests for reproduction cannot be so burdensome as to interfere with the operation of the custodian's constitutional and legal duties. Elliott v. District Attorney of Baton Rouge, 94-1804 (La.App. 1 Cir. 9/14/95), 664 So.2d 122, 126, writ denied, 95-2509 (La. 12/15/95), 664 So.2d 440. See also Beckett v. Serpas, 12-1349 (La.App. 4 Cir. 3/20/13), 112 So.3d 348, 353 ; Vandenweghe v. Parish of Jefferson, 11-52 (La.App. 5 Cir. 5/24/11), 70 So.3d 51, 58, writ denied, 11-1333 (La. 9/30/11), 71 So.3d 289. Nevertheless, any restriction or limitation imposed by the custodian places the burden on the custodian to justify the restriction or limitation. LSA-R.S. 44:35B; Title Research Corporation v. Rausch, 450 So.2d 933, 937-38 (La. 1984) ; Elliott, 664 So.2d at 126.
Louisiana Code of Civil Procedure article 3863 also provides that a writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law. A writ of mandamus is not an appropriate procedure where there is an element of discretion left to the public officer. Vandenweghe, 70 So.3d at 58.
DISCUSSION
The Public Record Requests
In its appeal, the Parish argues that the trial court erred in issuing a writ *464 of mandamus as to the five PRRs and in its legal conclusion that Ms. Stevens was denied access to public records. The Parish maintains that the five PRRs were overly broad, unduly burdensome, and of such a nature that they could not be practically responded to without negatively interfering with the records custodian's constitutional and legal duties. The Parish argues that there is a fine line between the right of the public to access public records and the potential harassment, disruption, and interference with the custodian's performance of constitutional and legal duties when the public records request process is abused. The Parish further contends that it did not ignore Ms. Stevens's requests and went above and beyond its legal duties in responding to her PRRs by communicating with Ms. Stevens in a good-faith attempt to narrow and refine her requests. Therefore, according to the Parish, Ms. Stevens should not have prevailed in this mandamus action on any of her requests. In response, Ms. Stevens maintains that she made specific requests that were not overly burdensome and to which the Parish intentionally failed to respond.
Initially, we find no error in the trial court's determination that the Parish did not violate the Public Records Law in connection with PRR 4716 and PRR 5025, as asserted by Ms. Stevens in her answer to the appeal. The trial court carefully considered both requests and concluded that the Parish produced what it had in its possession in response to the requests. We have thoroughly reviewed the record and can find no manifest error in this factual finding of the trial court. See Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La. 1993) ; Roper, 244 So.3d at ----.[8] However, the trial court determined that the Parish improperly responded to PRRs 5334, 5335, 5336, 5338, and 5367, which the Parish has appealed. Again, upon our review of the record, we cannot say that the trial court manifestly erred or was clearly wrong in these factual findings. The trial court considered all of the evidence presented and gave detailed reasons for judgment that are supported by the record. The trial court tailored a solution considering the complexities and the expansive time frames of the production requests.
The trial court further found that the Parish did attempt in good faith to work with Ms. Stevens with the production of the voluminous documents and concluded that the Parish did not act arbitrarily or capriciously as to PPRs 5334, 5335, 5336, and 5338. However, with regard to PRR 5367, the trial court determined that the Parish arbitrarily withheld the contracts and insurance certificates.[9] The contracts were produced three months after the Parish offered to provide them, and the insurance certificates were ultimately produced at trial. Again, upon our review, *465 we cannot say that these findings are manifestly erroneous or clearly wrong.
Ms. Stevens also complains that the Public Records Law does not allow compliance with the requests over a period of time as ordered by the trial court. However, considering the evidence at trial regarding the breadth of the requests and the difficulties of the multi-department searches, as well as the impact on the Parish's normal business operations, we find the court monitoring plan appropriate. See LSA-R.S. 44:33 and LSA-R.S. 44:35A. Further, we find no merit to the related arguments of Ms. Stevens in her answer to the appeal regarding the PRRs. Specifically, we find no merit to Ms. Stevens's assignments of error that the trial court erred in denying her motion for new trial, that the trial court used an improper burden of proof, or that the trial court failed to address certain issues raised by Ms. Stevens.
Penalties, Damages, and Attorney Fees
Ms. Stevens next contends that the trial court erred in failing to award her damages and penalties. As to her request for penalties, civil penalties are authorized only when a custodian unreasonably or arbitrarily fails to respond to the public records request within the three-day statutory period. However, the Parish responded to each of the seven PRRs within three days, and the trial court so found. Accordingly, there was no failure to respond to the request as required by LSA-R.S. 44:32, and civil penalties were not appropriate.
With regard to damages, LSA-R.S. 44:35E(1) provides for actual damages if the custodian arbitrarily or capriciously withheld the requested record. After having found that the Parish acted arbitrarily in failing to timely produce the contracts and insurance certificates in response to PRR 5367, the trial court found that Ms. Stevens failed to introduce any evidence to prove that she suffered any actual damages resulting from the actions of the Parish. We find no error in this finding of the trial court.
Regarding the award of attorney fees and costs to Ms. Stevens, the Parish contends that the trial court abused its discretion. The Parish asserts that because the trial court erred in finding that it failed to properly respond to the five PRRs, Ms. Stevens is not entitled to an award for attorney fees and costs under the provisions of LSA-R.S. 44:35D. Alternatively, the Parish maintains that should Ms. Stevens prevail on any of the PRRs on appeal, the trial court abused its discretion in awarding her attorney fees and costs, arguing that Ms. Stevens was unsuccessful on some of the PRRs, that she made the case needlessly expensive, and that the requests were aggressively burdensome. Therefore, according to the Parish, the facts of the case do not support a discretionary award of attorney fees, and each party should bear their own costs and fees. To the contrary, Ms. Stevens maintains that the trial court did not err in awarding attorney fees and, in fact, erred in not awarding a greater amount of attorney fees.
Louisiana Revised Statutes 44:35D provides:
If a person seeking the right to inspect, copy, or reproduce a record or to receive or obtain a copy or reproduction of a public record prevails in such suit, he shall be awarded reasonable attorney fees and other costs of litigation. If such person prevails in part, the court may in its discretion award him reasonable attorney fees or an appropriate portion thereof.
The trial court found that Ms. Stevens prevailed in part and awarded her *466 $20,000.00 in attorney fees. On appeal, we found no error in the dismissal of two of the PRRs, but also found no error in the trial court's conclusion that the Parish improperly responded to the remaining five PRRs, which resulted in the issuance of a writ of mandamus. Accordingly, the Parish's argument that Ms. Stevens was not legally entitled to any award of attorney fees and costs because she was unsuccessful lacks merit.
Nevertheless, we acknowledge that where a party is only partially successful in a suit for the production of public records, attorney fees are not mandated, but are discretionary. See LSA-R.S. 44:35D. And, while, under the unique facts of this case, we would not have found an award of attorney fees appropriate if sitting as the trial court, we are unable to say that the trial court abused its discretion in making said award. Further, with regard to the amount of attorney fees awarded, we cannot say that the trial court abused its vast discretion.
Lastly, in her appellate brief, Ms. Stevens has asked for attorney fees on appeal. Louisiana Code of Civil Procedure article 2133A provides, in pertinent part:
An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer.
An appeal imposes certain costs and formalities on the appellant not required of an appellate answer. An answer to an appeal is a much less costly and complex procedure. However, the tradeoff is that under LSA-C.C.P. art. 2133 the answer must state what the "relief demanded" is, and the answer operates as an appeal only from those matters "of which he complains in his answer." LSA-C.C.P. art. 2133. See Clark v. Schwegmann Giant Supermarket, 96-2301 (La.App. 4 Cir. 1/13/99), 740 So.2d 137, 142. Because Ms. Stevens did not include a request for attorney fees on appeal in her answer to the appeal, we decline to award her same.
We have carefully examined the record and affirm the judgment of the trial court.
CONCLUSION
For the foregoing reasons, we affirm the February 27, 2017 judgment of the trial court. Costs of this appeal in the amount of $6,234.45 shall be shared equally between the parties.
AFFIRMED.
Theriot, J. concurs
Attachment
TERRI LEWIS STEVENS AND JENNIFER FRUCHTNICHT, WIFE OF/AND CRAIG RIVERA
VERSUS
ST. TAMMANY PARISH GOVERNMENT
FILED: August 31, 2016
NUMBER 2015-11327 DIVISION "H"
22ND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY
STATE OF LOUISIANA
/s/
DEPUTY CLERK
*467 REASONS FOR JUDGMENT
This matter came on for trial on the merits on February 29, March 29, and March 30, 2016. Upon the conclusion of trial, the Court ordered post-trial memoranda, and thereafter took the matter under advisement. The Court having considered all of the evidence submitted herein, the testimony at trial, together with the entire record of these proceedings, makes the following findings in these Reasons for Judgment.
Plaintiffs initially filed a Petition for Injunctive Relief[1] on February 18, 2015, which included a request for a writ of mandamus for the Parish's failure to comply with the Public Records Act. That matter was set for hearing on February 25, 2015, and was continued by agreement of counsel to March 27, 2015. On March 27, 2015, the plaintiffs dismissed without prejudice the mandamus action, which was re-filed on April 1, 2015[2] . By Order dated June 3, 2015, both the injunction and mandamus action were referred for mediation by agreement of the parties. Mediation did not take place, and this mandamus action initially came before the Court on a motion for summary judgment filed by the defendant, which was granted in part and denied in part. Following same, trial on the remaining Public Records Requests was set and took place on the dates noted above.
LOUISIANA PUBLIC RECORDS LAW
The Louisiana Constitution Article 12, § 3 provides a fundamental right to the public to have access to public records, as follows;
No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law.
Pursuant to this Constitutional guarantee, La. R.S. 44:31 provides as follows;
A. Providing access to public records is a responsibility and duty of the appointive or elective office of a custodian and his employees.
B. (1) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person of the age of majority may inspect, copy, or reproduce any public record.
(2) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person may obtain a copy or reproduction of any public record.
(3) The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian.
La. R.S. 44:32 provides as follows:
A. The custodian shall present any public record to any person of the age of majority who so requests. The custodian shall make no inquiry of any person who applies for a public record, except an inquiry as to the age and identification of the person and may require the person to sign a register and shall not review, examine or scrutinize any copy, photograph, or memoranda in the possession of any such person; and shall extend to the person all reasonable comfort and facility for the full exercise of the right granted by this Chapter; provided that nothing herein contained shall prevent the custodian from maintaining such vigilance as is required to prevent *468 alteration of any record while it is being examined; and provided further, that examinations of records under the authority of this Section must be conducted during regular office or working hours, unless the custodian shall authorize examination of records in other than regular office or working hours. In this event the persons designated to represent the custodian during such examination shall be entitled to reasonable compensation to be paid to them by the public body having custody of such record, out of funds provided in advance by the person examining such record in other than regular office or working hours.
B. If any record contains material which is not a public record, the custodian may separate the nonpublic record and make the public record available for examination.
C. (1)(a) For all public records, except public records of state agencies, it shall be the duty of the custodian of such public records to provide copies to persons so requesting. The custodian may establish and collect reasonable fees for making copies of public records....
(d) Any person, as provided for in R.S. 44:31, may request a copy or reproduction of any public record and it shall be the duty of the custodian to provide such copy or reproduction to the person so requesting.
(2) For all public records of state agencies, it shall be the duty of the custodian of such records to provide copies to persons so requesting. Fees for such copies shall be charged according to the uniform fee schedule adopted by the commissioner of administration, as provided by R.S. 39:241.
Copies shall be provided at fees according to the schedule, except for copies of public records the fees for the reproduction of which are otherwise fixed by law. Copies of records may be furnished without charge or at a reduced charge to indigent citizens of this state or the persons whose use of such copies, as determined by the custodian, will be limited to a public purpose, including but not limited to use in a hearing before any governmental regulatory commission.
(3) No fee shall be charged to any person to examine or review any public records, except as provided in this Section, and no fee shall be charged for examination or review to determine if a record is subject to disclosure, except as may be determined by a court of competent jurisdiction.
D. In any case in which a record is requested and a question is raised by the custodian of the record as to whether it is a public record, such custodian shall within three days, exclusive of Saturdays, Sundays, and legal public holidays, of the receipt of the request, in writing for such record, notify in writing the person making such request of his determination and the reasons therefor. Such written notification shall contain a reference to the basis under law which the custodian has determined exempts a record, or any part thereof; from inspection, copying, or reproduction.
La. R.S. 44:33 states, in pertinent part:
A. (1) When a request is made for a public record to which the public is entitled, the official ... who has responsibility for the record shall have the record segregated from other records under his custody so that the public can reasonably view the record.
(2) If, however, segregating the record would be unreasonably burdensome or expensive, or if the record requested is maintained in a fashion that makes it readily identifiable and renders further segregation unnecessary, the official *469 shall so state in writing and shall state the location of the requested record.
B. (1) If the public record applied for is immediately available, because of its not being in active use at the time of the application, the public record shall be immediately presented to the authorized person applying for it. If the public record applied for is not immediately available, because of its being in active use at the time of the application, the custodian shall promptly certify this in writing to the applicant, and in his certificate shall fix a day and hour within three days, exclusive of Saturdays, Sundays, and legal public holidays, for the exercise of the right granted by this Chapter.
La. R.S. 44:35 provides for the enforcement of the above statutes as follows:
A. Any person who has been denied the right to inspect, copy, reproduce, or obtain a copy or reproduction of a record under the provisions of this Chapter, either by a determination of the custodian or by the passage of five days, exclusive of Saturdays, Sundays, and legal public holidays, from the date of his in-person, written, or electronic request without receiving a determination in writing by the custodian or an estimate of the time reasonably necessary for collection, segregation, redaction, examination, or review of a records request, may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney fees, costs and damages as provided for by this Section, in the district court for the parish in which the office of the custodian is located.
B. In any suit filed under Subsection A above, the court has jurisdiction to enjoin the custodian from withholding records or to issue a writ of mandamus ordering the production of any records improperly withheld from the person seeking disclosure. The court shall determine the matter de novo and the burden is on the custodian to sustain his action. The court may view the documents in controversy in camera before reaching a decision, Any noncompliance with the order of the court may be punished as contempt of court.
C. Any suit brought in any court of original jurisdiction to enforce the provisions of this Chapter shall be tried by preference and in a summary manner. Any appellate courts to which the suit is brought shall place it on its preferential docket and shall hear it without delay, rendering a decision as soon as practicable.
D. If a person seeking the right to inspect, copy, or reproduce a record or to receive or obtain a copy or reproduction of a public record prevails in such suit, he shall be awarded reasonable attorney fees and other costs of litigation. If such person prevails in part, the court may in its discretion award him reasonable attorney fees or an appropriate portion thereof.
E. (1) If the court finds that the custodian arbitrarily or capriciously withheld the requested record or unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32, it may award the requester any actual damages proven by him to have resulted from the actions of the custodian except as hereinafter provided. In addition, if the court finds that the custodian unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32 it may award the requester civil penalties not to exceed one hundred dollars per day, exclusive of Saturdays, Sundays, and legal public holidays for each such day of such failure to give notification.
*470 (2) The custodian shall be personally liable for the payment of any such damages, and shall be liable in solido with the public body for the payment of the requester's attorney fees and other costs of litigation, except where the custodian has withheld or denied production of the requested record or records on advice of the legal counsel representing the public body in which the office of such custodian is located, and in the event the custodian retains private legal counsel for his defense or for bringing suit against the requester in connection with the request for records, the court may award attorney fees to the custodian.
F. An award for attorney fees in any suit brought under the provisions of this Chapter shall not exceed the amounts approved by the attorney general for the employment of outside counsel.
The Louisiana Supreme Court instructs us that the provisions of the Constitution and the statutes must be liberally construed in favor of free and unrestricted access, "and any doubt must be resolved in favor of the right of access." St. Tammany Par. Coroner v. Doe , 2010-0946 (La. App. 1 Cir. 10/29/10), 48 So.3d 1241, 1245. Citizens' access to public records can be denied only when a law specifically and unequivocally provides otherwise. Title Research Corp. v. Rausch, 450 So.2d 933, 936 (La. 1984).
Based upon the above, the Court reviews the actions of the Parish in response to Ms. Stevens' public records requests at issue in this matter.
PUBLIC RECORDS REQUESTS (PRR) AT ISSUE
1. PRR 4716
On September 27, 2013, Ms. Stevens submitted the following Public Records Request by e-mail:
Please provide a PDF copy of the works in progress, or completed, Boundary, Utility, ALTA, and Topographical Survey drawings with relation to Dove Park Road. Per a discussion today with Mr. Jay C. Pittman, Parish Project Manager, the survey has been completed. Mr. Pittman will be requesting this information from the Civil/Surveyor now, per my conversation with him.
Also please provide the PDF drawings of the proposed Dove Park Road parish improvements including lane widening and buried utilities, including, but not limited to water, sewer, gas, electrical, telephone and cable lines.
Please provide a complete scope of work statement for the proposed widening effort including length and width of future roadway along with extent of proposed improvement, budget years as they relate to this scope.
If any of the requested information is not yet completed, please provide progress sets of drawings, along with an anticipated timeframe for completion.
In addition, if the sets are not yet completed, please indicate a time when members of the public may meet with Public Works officials to review the scope of work and discuss the objectives/options and intent.
Please provide the above mentioned information in electronic format-thumb drive being preferable. If you would be so kind as to notify me when the completed drive has been created I shall pick it up from the legal department.
Executive Counsel for the St. Tammany Parish Government, Kelly Rabalais, acknowledged receipt of the request by e-mail that same day, and advised that the request would be processed accordingly. Associate Counsel Deborah Henton responded to the request by way of a letter *471 dated October 23, 2013, wherein she advised Ms. Stevens as follows:
Although prior to your making this public records request, you spoke with Jay Pittman to determine that the survey has been completed, it is not final, nor is it in the possession of the Parish at this time. It is not the Parish's normal course, scope, and procedure to survey utilities in the type of survey that you are requesting.
Drawings of the proposed Dove Park Road parish improvements are not complete or final at this time.
Ms. Henton further advised that the Parish could not provide an estimate as to when the information requested in paragraphs one and two of Ms. Stevens' PRR would be finalized and in the Parish's possession. Finally, Ms. Henton advised that with regard to paragraph three of the PRR, namely the scope of work statement for the proposed widening effort, extent of proposed improvement, and budget years as they relate to this scope, the Parish had located 15 pages responsive to the request, which were made available to Ms. Stevens.
At the trial of fills matter, Ms. Henton testified that at tee time she produced these 15 pages, according to the members of the engineering department with whom Ms. Stevens had spoken, this was the complete set of documents responsive to Ms. Stevens' request. Ms. Henton further testified that in an effort to accommodate Ms. Stevens, Ms. Henton followed up with the engineering department and made another request to them to determine whether they had additional documentation responsive to this request. Additional documents were provided to Ms. Stevens on November 4, 2013.
Ms. Stevens testified that with regard to PRR 4716 the Parish failed to provide to her the surveys requested in the first paragraph. In support of her assertion that the Parish had a copy of the surveys, Ms. Stevens relies upon a series of e-mails between Jean Thibodeaux, the engineer with whom the Parish contracted for the Dove Park Road Widening project, and Jay Pittman of the St. Tammany Parish Department of Engineering.
Ms. Stevens further testified that she did not receive the scope of work statement that she requested. However, the evidence presented at trial shows that on November 5, 2013, Ms. Stevens personally received 15 pages responsive to her PRR, entitled "Scope of Work", which included a proposal of the total cost of the project. Ms. Stevens testified that in an e-mail of October 23, 2013, she asked whether "Parish Engineering or Capital Improvements budgets indicating a line item for Dove Park Road improvements for calendar years 2013 and 2014" would be included. Ms. Stevens asserts that she has not received said budgets; however this information was not requested in PRR 4716.
Ms. Stevens acknowledged that she received a progress set of drawings in response to her request in paragraph four of PRR 4716, but received no anticipated time frame for completion, or the final as-built drawings. She also asserts that she was not given the meeting requested in paragraph five of PRR 4716. Ms. Stevens testified that PRR 4716 was deficient in that she did not receive the final as-built drawings that showed how the size of the culvert installed in front of her property changed, why it changed, or the cost differentials.
As noted above, Deborah Henton testified that at the time that she responded to PRR 4716 on October 23, 2013, she provided to Ms. Stevens the complete set of documents in the possession of the Parish. While Ms. Stevens relies upon a series of *472 e-mails in support of her assertion that the Parish failed to provide her with the requested surveys, the Court finds that these e-mails indicate that Mr. Thibodeaux was in possession of the survey. There is no evidence that the survey was in the possession of the Parish at the time of Ms. Stevens' request on September 27, 2013. Ms. Stevens further testified that the response was deficient in that she did not receive the final as-built drawings regarding the Dove Park Road Widening Project. However, there is no evidence that the final drawings were in the possession of the Parish at the time of Ms. Stevens' request on September 27, 2013. The Public Records Law requires the custodian to produce or make available for copying, reproduction, or inspection existing records. Williams Law Firm v. Bd. of Sup'rs of Louisiana State Univ., 2003-0079 (La. App. 1 Cir. 4/2/04), 878 So.2d 557, 563. Even though she did not have an obligation to do so, Ms. Henton contacted the engineering department and provided additional documents on November 4, 2013. Ms. Stevens' requests for an anticipated time frame for completion of the drawings and for a meeting are not requests for public records and thus are beyond the scope of the PRR.
Thus, the Court finds that the Parish did not violate the Public Records Law in connection with PRR 4716, and dismisses Ms. Stevens' claim as to this request.
2. PRR 5025
On June 5, 2014, Ms. Stevens made the following Public Records Request by e-mail:
Under the Louisiana Public Records Act § 44:1 et seq., I am requesting copies of public records as follows:
All drainage maps and hydrology reports as it relates to storm water and regional retention/detention for the area including, but not limited to, the following:
Beatty Acres (North of Dove Park Road including 725 Dove Park Road and Double J), and Dove Park Road south, including streets: Swallow, Egret, Partridge and Sparrow, east to Buras Ranch Rd. All recorded and or documents ditches, culverts, swales, topographical surveys, construction documents, including construction drawings in progress.
Please provide all requested information in electronic form. If there are any fees for searching or copying these records, I would also like to request a waiver of all fees in that the disclosure of the requested information is in the public interest and will contribute significantly to the public's understanding of drainage issues along Dove Park Road. This information is not being sought for commercial purposes.
Section 44:32(D) of the Louisiana Public Records Act requires a response within three business days. If access to the records I am requesting will take longer than that time period, please contact me with information about when I might expect copies or the ability to inspect the requested records.
If you deny any or all of this request, please cite each specific exemption you feel justifies the refusal to release the information and notify me of the appeal procedures available to me under the law.
Ms. Rabalais acknowledged receipt of the request by e-mail that same day, and advised that the request would be processed accordingly. She also indicated that the Parish would coordinate its responses with a similar request made by another citizen, Kelly Kreminski. Ms. Henton responded to the request by way of a letter *473 dated June 6, 2014, wherein she advised Ms. Stevens that the documents she was seeking were currently in use, and that the Parish had begun the process of retrieving the documents. On July 9, 2014, Ms. Stevens sent an e-mail requesting the status of the fulfillment of this PRR. In response, Ms. Rabalais requested clarification "on the request for construction documents, all recorded and/or documents regarding ditches and swales, etc." Ms. Stevens replied by e-mail, indicating that she was seeking the following:
There is a culvert which was installed beneath Dove Park Road which is located at my western property line. This culvert and other structures installed to direct stormwater from South of Dove Park to North of Dove Park near where I live are what I seek documentation related to, in terms of construction drawings, along with the proposed subsurface drainage plans for the stormwater ditches along Dove Park Road.
I am seeking the updated construction plans related to that scope of work, including but not limited to, hydrology calculations, proposed storm pipe sizes, manholes, etc., and most specifically as it relates to proposed stormwater which might be directed onto my property.
Ms. Henton testified that she requested a meeting with the Department of Engineering regarding documents related to the installation of the culvert under Dove Park Road. After meeting with the director of engineering Ms. Henton learned that the culvert had been installed so long ago that there were no records regarding its installation. By e-mail dated July 10, 2014, Ms. Henton advised Ms. Stevens that with regard to PRR 5025 for drainage/hydrology information on Dove Park Road and the surrounding area, the Parish was able to produce the documents that were going to be produced in response to Ms. Kreminski's PRR. Ms. Henton provided Ms. Stevens with a listing of the electronic folders of those documents, which listing included watershed management models, drainage plans and topographic maps, and water quality monitoring information. Ms. Henton also advised that she was attempting to determine if the Parish was in possession of any additional documentation concerning the culvert located near 725 Dove Park Road. Ms. Henton asked whether Ms. Stevens would like a copy of the documents listed. Ms. Stevens replied by e-mail, and advised that she did not require a duplication of the information to be distributed to Ms. Kreminski.
On July 22, 2014, Ms. Henton notified Ms. Stevens by letter that the Parish had located documents responsive to her PRR. By letters dated August 6, 2014 and August 7, 2014, Ms. Henton again advised that a thumb drive containing documents responsive to PRR 5025 was available. Ms. Stevens picked up the thumb drive on August 8, 2014. According to Ms. Henton, the Parish considered the request closed.
By letter dated February 5, 2015[3] , Ms. Henton provided Ms. Stevens with a status report on all of Ms. Stevens' public records requests. With regard to PRR 5025, Ms. Henton listed the documents produced to Ms. Stevens on August 8, 2014, which included responses by the Engineering Department and the Department of Public Works. She advised that the Parish considered PRR 5025 closed.
*474 In a letter dated March 20, 2015 to Mr. Louis Koerner, counsel for Ms. Stevens, Ms. Henton addressed Mr. Koerner's allegations as to the insufficiency of certain Parish responses to PRR's submitted by Ms. Stevens. With regard to PRR 5025, Ms. Henton outlined the steps she had taken in response to this PRR, and advised that she confirmed wife the Engineering Department and in a search of Parish ordinances that there were no other drainage plans, or hydrology or hydrologic studies for the area other than those previously provided.
By letter dated April 8, 2015, Ms. Henton again provided Mr. Koerner with a status report on all of Ms. Stevens PRR's, including PRR 5025. Ms. Henton listed the documents provided to Ms. Stevens on August 8, 2014, which included the documents that had been produced to Ms. Kreminski. Ms. Henton stated in her April 8, 2015 letter that the Parish had produced every document that it could find that could be responsive to PRR 5025, and considered the matter closed.
Ms. Stevens testified that on August 8, 2014 she received what the Parish said were final construction drawings, scope of work statement and unit pricing for the project. She stated that the drawings were not as built. She further stated that she did not receive any information regarding ditches, culverts, or swales and did not receive any surveys. Ms. Stevens testified that she believed that Exhibits 28, 29, and 30 should have been produced in response to PRR 5025. Exhibits 28, 29, and 30 were attached to a post-trial memorandum filed by plaintiffs on March 31, 2015 in Docket No. 2015-10649, the injunction suit against the Parish. According to plaintiffs' memorandum, which was introduced into evidence in this matter, Exhibit 28 is a drainage profile drawing, Exhibit 29 is a proposed but unexecuted drainage easement, and Exhibit 30 is the plat referenced in the legal description. These documents date from 1990-1991 and were in the possession of Ms. Stevens at the time that this mandamus action was filed. Ms. Stevens also testified that documents contained in Joey Lobrano's file produced to Ms. Stevens on January 27, 2016, would also have been responsive to PRR 5025. However, these documents were not admitted into evidence at the trial of this matter and were not reviewed by the Court. Finally Ms. Stevens testified that she believed that a number of maps listed by the Parish Department of Informational Services would have been responsive to this request.
Ms. Henton testified that she understood Ms. Stevens' request to be for drainage maps and hydrology reports for Dove Park Road and the surrounding area, as well as information related to the construction and installation of the culvert under Dove Park Road, and revised or updated construction drawings for the proposed Dove Park Road Widening Project, and that she produced all documents responsive to that request on August 8, 2014. She further testified that she confirmed with the Engineering Department and in a search of Parish ordinances that there were no other drainage plans, or hydrology or hydrologic studies for the area. Ms. Stevens contends that Exhibits 28, 29, and 30, identified above, should have been produced in response to this request. The Court finds that these documents are not drainage maps or hydrology reports, nor are they related to the construction and installation of the culvert under Dove Park Road. These documents date from 1990-1991, and are not related to the Dove Park Road Widening Project.
Ms. Stevens further contends that a number of maps listed by the Parish Department *475 of Informational Services would have been responsive to this request. Ms. Stevens' request sought maps for the area including, but not limited to Beatty Acres and Dove Park Road south, including the following streets: Swallow, Egret, Partridge and Sparrow, east to Buras Ranch Rd. In fact, Ms. Stevens objected to the responsiveness to her PRR of the documents produced to Ms. Kreminski, as Ms. Kreminski's request included Brookstone, which her request did not. The Court finds that the Parish was not unreasonable in limiting its production to the area outlined by Ms. Stevens in her request.
Thus, the Court finds that the Parish did not violate file Public Records Law in connection with PRR 5025, and dismisses Ms. Stevens' claim as to this request.
3. PRR 5334
On January 20, 2015, Ms. Stevens made the following Public Records Request by e-mail:
Please provide all documentation, including but not limited to, email, phone records, text messages, ordinances, meeting video, proposals, appraisals, maps, surveys, drawings and contracts, as they relate to any and all acts of expropriation by St. Tammany Parish in the interest of the "Public Good" from January 2008 thru January 2015.
Please provide this information in electronic format, on a thumb drive or disc.
On January 21, 2015, Ms. Henton responded to the request by way of letter, wherein she advised Ms. Stevens that the documents she was seeking were currently in use, and that the Parish had begun the process of retrieving the documents. She estimated that the time reasonably necessary for collection, segregation (if necessary), redaction (if necessary), examination and/or review of the request was one month. By letter dated February 5, 2015, Ms. Henton provided Ms. Stevens with a status report on all of Ms. Stevens' public records requests. At that time, in regard to PRR 5334, Ms. Henton advised as follows:
Your request is broad and because you do not ask for a specific document, the Parish is unable to respond to your request. I can provide you with a list of expropriations from January 2008 through present. You are welcome to identify the expropriations for which you would like more information. Please let me know how you would like to proceed.
In a letter dated March 20, 2015 to Mr. Koerner, Ms. Henton addressed Mr. Koerner's allegations as to the insufficiency of certain Parish responses to PRR's submitted by Ms. Stevens. With regard to PRR 5334, Ms. Henton advised that she responded, requesting clarification.
By letter dated April 8, 2015, Ms. Henton provided to Mr. Louis Koerner, counsel for Ms. Stevens, a status report on all of Ms. Stevens PRR's. With regard to PRR 5334, Ms. Henton provided a three page list of all Parish expropriations since 2008, asked that he identify those in which he was interested, and advised that the Parish would provide him with information that it could locate on those specific expropriations. She further advised that:
This will require a multi-department search, including an IT search (which must be conducted by the IT Director on the weekends due to the volume of traffic and the sensitivity of the records being searched). Once you have located those items in which you are interested, I will need to speak with you about date restrictions and search terms.
On March 29, 2016, during the trial of this matter, a disc was produced to Ms. Stevens which counsel for the Parish represented *476 contained the litigation files for each expropriation.
Rick Loggins, Director of Technology for St. Tammany Parish testified at the trial of this matter. He stated that he handled all public records requests that the legal department sent to the technology department. He testified that he was the only person in the Parish with access to everything on the network servers of the Parish. He explained the procedure for conducting searches, including e-mail searches. With regard to PRR 5334, Mr. Loggins testified that it was impossible to run a search to get "all documentation" relating to an act of expropriation. While Loggins testified that there were over 17 million e-mails in the IT system, he indicated an e-mail search could be conducted and he did not testify as to the time requirements of same. Phone records can only be searched by caller identification numbers, not by subject matter. The Parish does not store text messages on its servers and Loggins does not have access to these records. Ordinances are contained on the Parish web-site. Meeting video is handled by the ITV station and it is not possible to run a computer search for terms on a meeting video. Each video would need to be reviewed for content. Proposals, appraisals, maps, surveys, drawings and contracts may or may not be in the IT system depending upon how they were received.
Ms. Stevens testified that she did not receive any of the information requested in PRR 5334.
PRR 5334 was one of four[4] requests made by Ms. Stevens on January 20, 2015 that are at issue in this suit. Following an initial letter acknowledging receipt of the request, Ms. Henton responded to each of the four requests by letter dated February 5, 2015, wherein she stated that, "Your request is broad and because you do not ask for a specific document, the Parish is unable to respond to your request." Ms. Henton offered to provide lists from which Ms. Stevens could identify specific documents, and requested that Ms. Stevens advise as to how she would like to proceed. In response to allegations from Mr. Koerner as to the insufficiency of the Parish responses to PRR's 5334, 5335, 5336, and 5338, Ms. Henton advised that she had responded to the PRR's, requesting clarification.
The Parish asserts that Ms. Stevens' requests were overly broad and unduly burdensome, and that the evidence presented at trial indicates that the Parish attempted to work with Ms. Stevens in obtaining the requested documents, with no reciprocal cooperation form Ms. Stevens.
The Louisiana Attorney General addressed the issue of the number of public records requests, and the breadth of those requests in response to a question posed by Grambling State University. See La. Att'y Gen. Op. No. 93-482 (Aug. 25, 1993).[5] In that opinion, the Attorney General observed that the Public Records Law contains no limitation on the number or size of the requests which may be made by a person. The Attorney General relied upon the provisions of La. R.S. 44:33, which states that if segregating the record would be unreasonably burdensome or expensive, the official shall so state in writing and *477 shall state the location of the requested record. The statute further provides that if the requested documents are in use, the custodian may fix a day, within three days of the request, for the review of such documents. Based upon the language of the statute, the Attorney General concluded as follows:
In response to a similar inquiry, this office has previously stated, "... if a broad request is received, the custodian may allow the examiner to look for the record if the custodian knows the record to be present in the records given for examination, and if such search for the record by the custodian would be so time consuming so as to interfere with the orderly conduct of his office." Attorney General Opinion No. 81-615.
Thus, what Grumbling is required to do is to segregate the requested documents, subject to the limitations of LSA-R.S. 44:33, and allow the requester to view such documents. The requester may then ask to make copies of such documents, and Grambling may charge for such copies, as provided for in LSA-R.S. 44:32. If the examination of these records would cause an unreasonable disruption of Grambling's normal business operation, a determination which is in the discretion of the custodian, the requester may be required to inspect these documents after hours. If this is the case, the provisions of LSA-R.S. 44:32A., concerning the payment of reasonable fees to the custodian's representative, should be followed. La. Att'y Gen. Op. No. 93-482 (Aug. 25, 1993).
In response to PRR 5334, the Parish offered to provide a list of expropriations. The Parish provided the list on April 8, 2015, after this suit was filed. At the time of trial, the Parish produced a disc represented to be the litigation file for each expropriation.
The Court recognizes the breadth of the request, as well as the difficulties in conducting a multi-department search, the time required for such a search, and the negative impact on the normal business operations of the Parish, However, as stated in La. R.S. 44:31, providing access to public records is a duty of the office of a custodian and his employees. La. R.S. 44:32 further requires the custodian to present any public record to any person of the age of majority who so requests. The action taken by the Parish requiring Ms. Stevens to identify expropriations for which she would like information from a list produced by the Parish is not authorized under the Public Records Law. Rather, pursuant to La. R.S. 44:33, the Parish was required to segregate the requested documents and allow Ms. Stevens to view them. In this mandamus action, the jurisdiction of the court is limited by La R.S. 44:35 (B) to enjoining the custodian from withholding records or to issuing a writ of mandamus ordering the production of any records improperly withheld from the person seeking disclosure.
Thus, the Court finds that the Parish improperly responded to PRR 5334. In accordance with La R.S. 44:35 (B), the Court hereby renders judgment making the requested writ of mandamus peremptory, ordering the production of or allowing the right to inspect the records requested in PRR 5334 that are in the possession of the Parish and were not previously produced, subject to the limitations and pursuant to the procedures set forth in the Public Records Law, La. R.S. 44:32 -33. The Court recognizes that full production may take months, especially if after-hours inspection is required so as not to disrupt the normal business operations of the Parish, and *478 that the Parish cannot guarantee production of "all documentation". In light of these factors, Court monitoring is deemed to be appropriate.
Because of the broad request and the Parish's actions the Court does not find that the Parish arbitrarily or capriciously withheld the requested record. While the action taken by the Parish was not authorized by statute, the evidence presented at trial indicated that the Parish attempted to work with Ms. Stevens in obtaining the requested documents. See Dwyer v. Early, 2002-1545 (La. App. 4 Cir. 3/12/03), 842 So.2d 1124, 1125, writ denied, 2003-1013 (La. 5/30/03), 845 So.2d 1053.
4. PRR 5335
On January 20, 2015, Ms. Stevens made the following Public Records Request by e-mail:
Please provide all documentation, including but not limited to, email, meetings, phone records, text messages, ordinances, meeting video, proposals, appraisals, maps, surveys, drawings and contracts, as they relate to any and all acts/actions performed by the St. Tammany Department of Public Works/ Maintenance, and Parish staff and elected officials, boards (elected or appointed) as it may relate to: streets, ditches, laterals and waterways, from January 2004 thru January 2015 in District 5, (all components).
Maintenance activities performed on all public/private ditches with District 5 are requested to be included, including scheduled work, proposed work and completed work. Timesheets, worker notes and comments, documented machinery records of use, and all proof of actions performed, is requested to be provided.
Please provide this information in electronic format, on a thumb drive or disc.
On January 21, 2015, Ms. Henton responded to the request by way of letter, wherein she advised Ms. Stevens that the documents she was seeking were currently in use, and that the Parish had begun the process of retrieving the documents. She estimated that the time reasonably necessary for collection, segregation (if necessary), redaction (if necessary), examination and/or review of the request was one month. By letter dated February 5, 2015, Ms. Henton provided Ms. Stevens with a status report on all of Ms. Stevens' public records requests. At that time, in regard to PRR 5335, Ms. Henton advised as follows:
Your request is broad and because you do not ask for a specific document, the Parish is unable to respond to your request. In order to accommodate you, the Parish can provide you with a list of all parish maintained roads and drainage features in District 5. You may identify a specific document that you are interested in, and we will try to obtain this information for you. Please let me know how you would like to proceed.
In a letter dated March 20, 2015 to Mr. Koerner, Ms. Henton addressed Mr. Koerner's allegations as to the insufficiency of certain Parish responses to PRR's submitted by Ms. Stevens. With regard to PRR 5335, Ms. Henton advised that she responded, requesting clarification.
By letter dated April 8, 2015, Ms. Henton provided to Mr. Koerner a status report on all of Ms. Stevens PRR's. With regard to PRR 5335, Ms. Henton provided a 50 page list of all roads, laterals ponds, and bridges in District 5, and asked that he identify those in which he was interested, and advised that the Parish would provide information on those specific drainage *479 features and/or streets that it could locate. She further advised that:
This will require a multi-department search, including an IT search (which must be conducted by the IT Director on the weekends due to the volume of traffic and the sensitivity of the records being searched). Once Stevens has located those items in which she is interested, I will need to speak with you about date restrictions and search terms.
Ms. Henton testified that in order to obtain the list, she contacted the Department of Public Works, which was able to create the list. Ms. Henton testified that it was not possible to respond to Ms. Stevens' request, which sought the act or actions of an employee over a ten-year period of time that in any way related to hundreds of different features within the Parish. She testified that such a search would interfere with the operation of Parish government and not allow Parish employees to attend to their duties and responsibilities.
Mr. Loggins testified as to the difficulties in running a computer search for the requested documents. He testified that in his opinion it would take months to run such a search, during which time the Parish would be unable to run other public records requests. He further testified that he could not guarantee that such a search would return all documentation related to any and all acts of Parish employees. Loggins did not establish that the sole means of production and/or inspection was an IT search.
Ms. Stevens testified that she did not receive any documents in connection with PRR 5335. Ms. Stevens also identified a number of documents that she received in response to discovery requests in her injunction suit that she identified as being responsive to this request.
The Louisiana Attorney General addressed the custodian's duty when a search for a broad public records request would interfere with the operation of his office in response to a request from Mr. Albert Kennard of the Allen Parish School Board. See 1980-81 La. Op. Att'y Gen. 181 (1981). The Attorney General cited La. R.S. 44:32(A), which provides that examinations of records must be conducted during regular office or working hours, unless the custodian authorizes examination of records in other than regular office or working hours. In that case, the persons designated to represent the custodian during such examination shall be entitled to reasonable compensation to be paid to them by the public body having custody of such record, out of funds provided in advance by the person examining such record in other than regular office or working hours. The Attorney General stated:
We are of the opinion that because the Public Records Act requires the custodian to extend all 'reasonable comfort and facility' and because the statute requires first that the custodian honor the request during the course of normal business hours, an order by the custodian requiring after hour examination is subject to strict scrutiny and will be allowed when the request is of such a magnitude that it disrupts normal office procedure to the point where the office ceases to operate qua office. Mere inconvenience is not enough to justify a citizen to pay for a constitutional guarantee. However, we do note that the line between inconvenience and disruption or interference with office conduct is a question of discretion which must be exercised in good faith by the custodian ... In sum, because of the strong constitutional and statutory guarantees regarding Public Records, any other interpretation of the Act would deprecate the serious nature of these rights.
*480 [I]f a 'broad request' is received, the custodian may allow the examiner to look for the record if the custodian knows the record to be present in the records given for examination, and if such search for the record by the custodian would be so time consuming so as to interfere with the orderly conduct of his office.
For all of the reasons indicated above in connection with PRR 5334 and in light of the procedures provided by statute, the Court finds that the Parish improperly responded to PRR 5335. In accordance with La R.S. 44:35 (B), the Court hereby renders judgment making the requested writ of mandamus peremptory, ordering the production of or allowing the right to inspect the records requested in PRR 5335 that are in the possession of the Parish, subject to the limitations and pursuant to the procedures set forth in the Public Records Law, La. R.S. 44:32 -33. The Court recognizes that full production may take months, especially if after-hours inspection is required so as not to disrupt the normal business operations of the Parish, and that the Parish cannot guarantee production of "all documentation". In light of these factors, Court monitoring is deemed to be appropriate.
As with PRR 5334, the Court does not find that the Parish arbitrarily or capriciously withheld the requested records. This was a broad request, and the evidence presented at trial indicated that the Parish attempted to work with Ms. Stevens in obtaining the requested documents.
5. PRR 5336
On January 20, 2015, Ms. Stevens made the following Public Records Request by e-mail:
Please provide all documentation, including but not limited to, email, phone records, text messages, ordinances, meeting video, proposals, appraisals, maps, surveys, drawings and contracts, as they relate to any and all Parish owned or utilized drainage laterals, including full drainage inventory, as documented by St. Tammany Parish from January 1995 thru January 2015. All proof of ownership records as they relate to the above requests. All donations and dedication, including consideration granted for said parcels is to be included in this request, as well.
Please provide this information in electronic format, on a thumb drive or disc.
On January 21, 2015, Ms. Henton responded to the request by way of letter, wherein she advised Ms. Stevens that the documents she was seeking were currently in use, and that the Parish had begun the process of retrieving the documents. She estimated that the time reasonably necessary for collection, segregation (if necessary), redaction (if necessary), examination and/or review of the request was one month. By letter dated February 5, 2015, Ms. Henton provided Ms. Stevens with a status report on all of Ms. Stevens' public records requests. At that time, in regard to PRR 5336, Ms. Henton advised as follows:
Your request is broad and because you do not ask for a specific document, the Parish is unable to respond to your request. However, the Parish can provide you with a list of all drainage features Parish-wide. You may identify a specific drainage feature(s) for which you would like more information. Please let me know how you would like to proceed.
In a letter dated March 20, 2015 to Mr. Koerner, Ms. Henton addressed Mr. Koerner's allegations as to the insufficiency of certain Parish responses to PRR's submitted by Ms. Stevens. With regard to PRR
*481 5336, Ms. Henton advised that she responded, requesting clarification.
By letter dated April 8, 2015, Ms. Henton provided to Mr. Louis Koerner, counsel for Ms. Stevens, a status report on all of Ms. Stevens PRR's. With regard to PRR 5336, Ms. Henton provided a 6 page list of all ponds maintained by the Parish, a 13 page list of all bridges maintained by the Parish, and a 137 page list of all drainage laterals maintained by the Parish. She asked Mr. Koerner to identify those in which Stevens was interested, and advised that the Parish would provide information on those specific drainage features and/or streets that it could locate. She further advised that:
This will require a multi-department search, including an IT search (which must be conducted by the IT Director on the weekends due to the volume of traffic and the sensitivity of the records being searched). Once Stevens has located those items in which she is interested, I will need to speak with you about date restrictions and search terms.
Mr. Loggias testified as to the difficulties in running a computer search for the requested documents. He testified that in his opinion it would take many months longer to run a search for the documents requested in PRR 5336 than to run the search for the documents requested in PRR 5335, again to the exclusion of all other electronic public records searches. He again testified that he could not guarantee that such a search would return all documentation.
Ms. Stevens testified that she did not receive any documents in connection with PRR 5336. She identified a number of documents that she received in late 2015 in response to discovery requests in her injunction suit that she identified as being responsive to this request and establishing that the Parish had the information but did not provide it to her under the PRR.
For all of the reasons indicated above in connection with PRR 5334 and 5335, and in light of the procedures provided by statute, the Court finds that the Parish improperly responded to PRR 5336. In accordance with La R.S. 44:35 (B), the Court hereby renders judgment making the requested writ of mandamus peremptory, ordering the production of or allowing the right to inspect the records requested in PRR 5336 that are in the possession of the Parish, subject to the limitations and pursuant to the procedures set forth in the Public Records Law, La. R.S. 44:32 -33. The Court recognizes that full production may take months, especially if after-hours inspection is required so as not to disrupt the normal business operations of the Parish, and that the Parish cannot guarantee production of "all documentation". In light of these factors, Court monitoring is deemed to be appropriate.
The Court does not find that the Parish arbitrarily or capriciously withheld the requested records. This was a broad request, and the evidence presented at trial indicated that the Parish attempted to work with Ms. Stevens in obtaining the requested documents.
6. PRR 5338
On January 20, 2015, Ms. Stevens made the following Public Records Request by e-mail:
Please provide all documentation, including but not limited to, email, phone records, text messages, ordinances, meeting video, proposals, appraisals, maps, surveys, drawings and contracts, as they relate to any and all MS4 permits submitted, reviewed, and/or granted by St. Tammany Parish from January 2008 thru January 2015.
*482 In addition, please provide all reports, both required and internal, as they relate to TMDL requirements/compliance (both formal and internal) for District 5. All collected sampling information, analysis findings, recommendations, reports, and proposals for corrective action are desired.
This request is to include all public and private actions undertaken on the part of the Parish to determine particulate matter, solids, fecal coliform and or e.coli present in potable water wells, ditches, waterways, Parish drainage ways, state waterways, etc. EPA, DHH, and/or DEQ documents as related to this request are also to be included, please. All records or regular samplings and schedules for EPA 303(d) listed areas within District 5 as well as any other reported calls for random sampling within the District are requested.
Please provide this information in electronic format, on a thumb drive or disc.
On January 21, 2015, Ms. Henton responded to the request by way of letter, wherein she advised Ms. Stevens that the documents she was seeking were currently in use, and that the Parish had begun the process of retrieving the documents. She estimated that the time reasonably necessary for collection, segregation (if necessary), redaction (if necessary), examination and/or review of the request was one month. By letter dated February 5, 2015, Ms. Henton provided Ms. Stevens with a status report on all of Ms. Stevens' public records requests. At that time, in regard to PRR 5338, Ms. Henton advised Ms. Stevens that her request was broad and because she did not ask for a specific document, the Parish was unable to respond to her request. Ms. Henton listed a number of items that the Parish could provide, and provided a DHH website from which Ms. Stevens could get information.
In a letter dated March 20, 2015 to Mr. Koerner, Ms. Henton addressed Mr. Koerner's allegations as to the insufficiency of certain Parish responses to PRR's submitted by Ms. Stevens. With regard to PRR 5338, Ms. Henton advised that she responded, requesting clarification.
By letter dated April 8, 2015, Ms. Henton provided to Mr. Louis Koerner, counsel for Ms. Stevens, a status report on all of Ms. Stevens PRR's. With regard to PRR 5338, Ms. Henton provided 33 separate reports, comprising 4,067 pages. Ms. Henton testified that these were the documents that she said that she could produce in her letters of February 5 and March 20, 2015.
Ms. Stevens denied receiving any documents in response to this PRR, testifying that she received documents responsive to this PRR in a random production in the injunction case. In her post trial brief, with regard to PRR 5338, Ms. Stevens states that no interactive maps were produced. PRR 5338 did not request interactive maps.
PRR 5338 did request emails relating to any and all MS4 permits submitted, reviewed, and/or granted by the Parish from January 2008 thru January 2015. There has been no evidence submitted that any e-mails were produced in response to PRR 5338, nor any testimony that the e-mails could not be produced.
For all of the reasons indicated above in connection with PRR 5334 and 5335, the Court finds that the Parish improperly responded to PRR 5338, In accordance with La R.S. 44:35 (B), the Court hereby renders judgment making the requested writ of mandamus peremptory, ordering the production of the e-mails requested in PRR 5338, subject to the limitations and *483 pursuant to the procedures set forth in the Public Records Law, La. R.S. 44:32 -33.
The Court does not find that the Parish arbitrarily or capriciously withheld the requested records. This was a broad request, and the evidence presented at trial indicated that the Parish attempted to work with Ms. Stevens in obtaining the requested documents.
7. PRR 5367
On February 3, 2015, Ms. Stevens made the following Public Records Request by e-mail:
Please provide all documentation, including but not limited to, email, phone records, text messages, ordinances, meeting video, proposals, appraisals, maps, surveys, drawings and contracts, as they relate to the Dove Park widening contracts with any and all consultants and general contractors bidding and/or awarded the scope of work, thru February 2015. This request includes all parish staff correspondence, including requests for revisions to the documents during the preliminary and final release, before and after bidding. All Council staff and support staff correspondence, including from/to Councilman Marty Gould is requested to be included.
All related documents including RFP, RFQ, certificates of insurance provided by the awarded professional firms and general contractors including limits of insurances required and ACCORD certificates requested and/or provided.
Please provide this information in electronic format, on a thumb drive or disc.
On February 4, 2015, Ms. Henton responded to the request by way of letter, wherein she advised Ms. Stevens that the documents she was seeking were currently in use, and that the Parish had begun the process of retrieving the documents. She estimated that the time reasonably necessary for collection, segregation (if necessary), redaction (if necessary), examination and/or review of the request was one month. By letter dated February 5, 2015, Ms. Henton provided Ms. Stevens with a status report on all of Ms. Stevens' public records requests. At that time, in regard to PRR 5367, Ms. Henton advised as follows:
Your request is broad and because you do not ask for a specific document, the Parish is unable to respond to your request. In an effort to accommodate you, we can provide documents from the Parish Council, the Department of Procurement and the Department of Engineering as they relate to the Dove Park widening project.
In a letter dated March 20, 2015 to Mr. Koerner, Ms. Henton addressed Mr. Koerner's allegations as to the insufficiency of certain Parish responses to PRR's submitted by Ms. Stevens. With regard to PRR 5367, Ms. Henton advised that she responded, requesting clarification.
Ms. Henton testified that in May 2015, the Parish produced to Ms. Stevens its contracts with Richard C. Lambert Consultants, LLC, J. Thibodeaux and Associates LLC, and Magee Excavation & Development LLC. She testified that she offered to provide the documents in her letter of February 5, 2015, but did not explain why she did not produce them until May. In connection with her testimony on March 29, 2016, the Parish produced to Ms. Stevens certificates of liability insurance for Richard C. Lambert Consultants, LLC, J. Thibodeaux and Associates, LLC, and McGee Excavation and Development, LLC. She explained that she did not produce the contracts of insurance previously because Ms. Stevens did not advise the Parish that she did *484 not have the insurance certificates. Ms. Henton testified that the first time she became aware that Ms. Stevens wanted the insurance certificates was in the affidavit filed by Ms. Stevens in September 2015. Ms. Henton did not explain why she did not produce the insurance certificates at that time.
Ms. Stevens acknowledged receipt of the contracts but testified that she did not receive what she requested.
In addition to the contracts and insurance certificates, PRR 5367 also sought correspondence, including requests for revisions, including that from/to Councilman Marty Gould, which Ms. Stevens testified that she has not received. She also requested e-mails relating to the Dove Park widening contacts. There has been no evidence submitted that any e-mails were produced in response to PRR 5367.
For all of the reasons indicated above in connection with PRR 5334 and 5335, and in light of the procedures provided by statute, the Court finds that file Parish improperly responded to PRR 5367. In accordance with La R.S. 44:35 (B), the Court hereby renders judgment making the requested writ of mandamus peremptory, ordering the production of or allowing the right to inspect the records requested in PRR 5367 that are in the possession of the Parish and were not previously produced, subject to the limitations and pursuant to the procedures set forth in the Public Records Law, La. R.S. 44:32 -33.
The Court finds that the Parish arbitrarily withheld the contracts and insurance certificates requested in PRR 5367.
ATTORNEY FEES AND DAMAGES
Ms. Stevens has prevailed in part in this mandamus action. Thus, pursuant to La. R.S. 44:35(D), this Court has discretion to award her reasonable attorney fees or an appropriate portion thereof. In addition, the Court found that with regard to PER 5367, the Parish arbitrarily withheld the requested records, and thus, pursuant to La. R.S. 44:35(E)(1) may award Ms. Stevens any actual damages proven to have resulted from the Parish's action with regard to PRR 5367.
The parties agreed prior to the commencement of trial to address the issue of attorney fees and damages following the presentation of all testimony herein. The Court held open these issues to be addressed at a later time and will reset these issues upon motion of either party.
THESE REASONS DO NOT CONSTITUTE A WRITTEN JUDGMENT. The Court will prepare a judgment in conformity with these Reasons.
Covington, Louisiana, this 31 day of August, 2016.
/s/
HONORABLE ALLISON H. PENZATO
TERRI LEWIS STEVENS AND JENNIFER FRUCHTNICHT, WIFE OF/AND CRAIG RIVERA
VERSUS
ST. TAMMANY PARISH GOVERNMENT
FILED: February 10, 2017
NUMBER 2015-11327 DIVISION "H"
22ND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY
STATE OF LOUISIANA
DEPUTY CLERK
SUPPLEMENTAL REASONS FOR JUDGMENT
This matter came on for trial on the merits, and on August 31, 2016, the Court issued Reasons for Judgment, finding therein that Ms. Stevens prevailed in part in her mandamus action. The Court further *485 noted that prior to the commencement of trial the parties agreed to address the issue of attorney fees and damages following the presentation of all testimony. At a status conference held on September 30, 2016, the Court set Plaintiff's Motion for Attorney's Fees and Court Costs, which came for hearing on October 21, 2016. After hearing the arguments of the parties, the Court took the matter under advisement. Thereafter, by Order dated December 21, 2016, supplemental briefing to be filed on or before January 31, 2017, was requested from the parties on the following two issues:
1. The evidentiary value of plaintiff's exhibits, i.e. the bills from Louis Koerner and James Blazek for legal fees, submitted absent testimony; and
2. The contingent nature of the agreement between Mr. Blazek and Ms. Stevens for attorney's fees, its compliance with all applicable provisions of law, and the evidentiary burden required.
The plaintiff, through counsel James Blazek, and the defendant both timely filed briefs. Mr. Koerner filed a brief on February 1, 2017, addressing the issues raised in defendant's supplemental brief. As Mr. Koerner's brief was not timely filed, it was not considered. After consideration of the evidence submitted as well as the record in this matter, the Court now issues these Supplemental Reasons for Judgment.
At the outset, the Court addresses a clerical error contained in the previously issued Reasons for Judgment. With respect to PRR 4716, this Court inadvertently omitted the language in bold from Ms. Stevens' September 27, 2013 e-mail:
Please provide a PDF copy of the works in progress, or completed, Boundary, Utility, ALTA, and Topographical Survey drawings with relation to Dove Park Road. Per a discussion today with Mr. Jay C. Pittman, Parish Project Manager, the survey has been completed, Mr. Pittman will be requesting this information from the Civil/Surveyor now, per my conversation with him.
Also please provide the PDF drawings of the proposed Dove Park Road parish improvements including lane widening and buried utilities, including, but not limited to water, sewer, gas, electrical, telephone and cable lines.
Please provide a complete scope of work statement for the proposed widening effort including length and width of future roadway along with extent of proposed improvement, timetables for work, if phased, as well as existing and proposed budgets for the next two budget years as they relate to this scope.
If any of the requested information is not yet completed, please provide progress sets of drawings, along with an anticipated timeframe for completion.
In addition, if the sets are not yet completed, please indicate a time when members of the public may meet with Public Works officials to review the scope of work and discuss the objectives/options and intent.
Please provide the above mentioned information in electronic format-thumb drive being preferable. If you would be so kind as to notify me when the completed drive has been created I shall pick it up from the legal department.
The addition of the emphasized language does not change this Court's finding that the Parish did not violate the Public Records Law in connection with PRR 4716. As discussed previously, Ms. Henton testified at trial that she provided to Ms. Stevens the complete set of documents in the possession of the Parish at the time of the response. Ms. Stevens failed to prove the *486 existence of documents as of the date of production that were not produced.
As noted above, prior to the commencement of trial the parties agreed to address the issue of attorney fees and damages following the presentation of all testimony. Specifically, plaintiff indicated that Louis Koerner was available to testify as to attorney fees and damages. At that time, and in connection with Mr. Koerner's testimony, the Court agreed to hold the matter open to submit his testimony by deposition. At the close of the plaintiff's case, plaintiff indicated that the only matters left open were Mr. Koerner's testimony concerning attorney fees and costs and a proffer of Ms. Rester's testimony. Thus, at the October 21, 2016 hearing, this Court did not allow Ms. Stevens to testify as to attorney fees and damages.[1] There was no reservation at the time of trial as to the introduction of the billing records of Mr. Blazek and/or his testimony in connection with same.
The Louisiana Public Records Law provides that any person who has been denied the right to inspect, copy, reproduce, or obtain a copy or reproduction of a record under the provisions of the Law, may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney fees, costs and damages as provided for by this Section. La. R.S. 44.35(A). If such person prevails in part, the court may in its discretion award him reasonable attorney fees or an appropriate portion thereof. La. R.S. 44:35(D). Additionally, if the court finds that the custodian arbitrarily or capriciously withheld the requested record or unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32, it may award the requester any actual damages proven by him to have resulted from the actions of the custodian except as hereinafter provided. In addition, if the court finds that the custodian unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32 it may award the requester civil penalties not to exceed one hundred dollars per day. La. R.S. 44:35(E). An award for attorney fees in any suit brought under the provisions of the Louisiana Public Records Law shall not exceed the amounts approved by the attorney general for the employment of outside counsel. La. R.S. 44:35(F).
In connection with the Motion to Fix Attorney Fees, Costs, and Damages, plaintiff attached as exhibits a bill from Louis Koerner for professional service rendered, and a bill from James Blazek for legal fees, as well as a printout of costs from the St. Tammany Parish Clerk of Court. At file hearing in this matter, St. Tammany withdrew its authenticity and hearsay objections to the proposed exhibits, which were introduced into evidence. Plaintiff offered no testimony at the hearing. As the bills were admitted into evidence without objection, the Court finds that they are properly before the Court for consideration. St. Tammany disputes numerous billing entries, as well as the reasonableness of the fee.
Mr. Blazek indicated that his agreement with Ms. Stevens provided that he would only seek attorney's fees if such fees were recovered from St. Tammany. In her supplemental response filed January 31, 2017, plaintiff "submit[ted] that the financial arrangement between Ms. Stevens and Mr. Blazek is not an issue for this Court's consideration." The Court disagrees, as Mr. Blazek is seeking an award for his fees from this Court. The fee agreement appears to be a contingency arrangement of some type, which, in order to be effective against third parties, must be in writing *487 and recorded. See Hall v. St. Paul Fire & Marine Ins. Co., 03-1333 (La. App. 5 Cir. 2/23/04), 868 So.2d 910, 912, writ denied, 2004-0756 (La. 5/7/04), 872 So.2d 1087. However, as the basis of any award of attorney fees would arise from statute, not via her contractual relationship with her attorney, the Court finds that the agreement between Ms. Stevens and Mr. Blazek does not preclude an award for attorney fees.
Mr. Koerner's bill indicates total time spent of 110 hours, at $300.00 per hour, for a total fee of $33,000.00. Mr. Blazek's bill reflects 162.75 hours at $225.00 per hour, for a total of $36,618.75. The Court notes that Mr. Koerner's bill references both the injunction and mandamus suits, and includes entries related to the preparation of the original injunction petition, as well as the dismissal of the PRR issues from that suit because of plaintiffs' improper cumulation of this summary proceeding with the injunctive relief requested. As there was no testimony relating the work done prior to the preparation of this mandamus suit, the Court disallows all entries prior to the 4/1/15 billing entry entitled "Preparation of stand-alone mandamus suit", deducting from Mr. Koerner's bill 30.9 hours as being unrelated to the issuance of these proceedings. The Court also disallow 7.25 hours from Mr. Blazek's bill for a 6/18/15 entry for meeting with clients to review case. Fees incurred related to plaintiffs' decision to change counsel are not related to the issuance of these proceedings.
Thus, this Court must determine whether attorney fees in the amount of $58,717.50 (79.1 hours for Mr. Koerner at $300.00 per hour and 155.5 hours for Mr. Blazek at $225.00 per hour) are reasonable in this matter. The Louisiana Supreme Court in State, Dep't of Transp. & Dev. v. Williamson , 597 So.2d 439 (La. 1992) set forth the following factors to be considered in determining the reasonableness of attorney fees: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge. Williamson , 597 So.2d at 442.
Turning to this particular case, the record must be examined by the Court in light of the above listed factors to determine a reasonable attorney fee in this matter.
Plaintiffs, through counsel Koerner, initially filed a Petition for Injunctive Relief[2] on February 18, 2015, which included a request for a writ of mandamus for the Parish's failure to comply with the Public Records Act. On March 27, 2015, the plaintiffs dismissed without prejudice the mandamus action, which was re-filed on April 1, 2015[3] , seeking writs of mandamus ordering St. Tammany to correct parish maps and to fully respond to eight specific public records requests. The parties agreed to mediation in this and the related injunction matter and these matters were referred for mediation by Order dated June 3, 2015. A Notice of Enrollment was filed by Mr. Blazek on June 18, 2015. On September 3, 2015, St. Tammany filed a Motion for Summary Judgment, which was heard on January 13, 2016. At that time, the Court granted the Summary Judgment as to plaintiffs' request to correct parish maps and as to PRR 5366. Summary Judgment *488 was denied as to the remaining seven public records requests. A three day trial was held on February 29, March 29, and March 30, 2016. The Court found that St. Tammany had complied with the Public Records Law prior to the filing of suit with regard to PRRs 4716 and 5025. The Court found that St. Tammany violated the Public Records Law with regard to the remaining five requests. Finally, this hearing on plaintiff's motion for attorney fees was held on October 21, 2016.
Considering the factors for reasonableness that are particular to this case, the ultimate result obtained by plaintiffs was mixed as their claim to have parish maps corrected was dismissed pre-trial. At trial, two of the PRRs were dismissed, but a mandamus was issued for the remaining five requests. Further, all claims of Jennifer Fruchtnicht and Craig Rivera were dismissed.
The litigation at issue was important as the Louisiana Constitution provides a fundamental right to the public to have access to public records. However, Ms. Stevens was not precluded from bringing her claims as Mr. Blazek agreed to represent her on a pro-bono basis seeking only such fees as awarded by the Court.
With regard to the extent of the work performed and the number of appearances made, the Court notes that the record of this mandamus action does not reflect that discovery was conducted (although Mr. Koerner seeks to recover for time spent in such). Mr. Blazek appeared for a motion for summary judgment and a three day trial, with briefing before and after by plaintiffs. The Court notes that much of the testimony at trial was repetitive and a significant portion of the trial was devoted to the PRRs that were dismissed. The vast majority of the work performed before this Court with regard to this litigation was performed by Mr. Blazek. While the matter involved a large number of documents, the facts were not intricate.
There was no evidence introduced as to whether the hourly rates charged by Mr. Koerner and Mr. Blazek are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation, See Covington v. McNeese State Univ., 2012-2182 (La. 5/7/13), 118 So.3d 343. Plaintiffs failed to produce any evidence regarding the prevailing rates in the community, or any evidence as to their experience in this field. The Court finds that $175,00 is a reasonable hourly rate for this community.
Movers elected not to offer the testimony of Mr. Koerner or attempt to offer the testimony of Mr. Blazek[4] , leaving the Court the task of evaluating their billing entries. A careful review of the bills by the Court calls into question their reliability and reasonableness. By way of example, Mr. Koerner billed time on 4/2/15 and 4/6/15 for a "10.1 conference"; however, as this suit was filed on April 1, 2015 there could be no outstanding discovery at that time. He billed time on 4/19/15 and 4/20/15 for issues related to a motion to compel discovery. No such motion was filed in this suit. He billed time on 6/26/15 for deposition notices; however there was no testimony that such depositions related to this suit. Mr. Blazek billed time on January 15, 2016 and July 15, 2016 for defending his use of emails that were the subject of the Court's previously issued protective order in Docket No. 2015-10649. Further, Mr. Blazek's bills lack adequate detail for the *489 hours billed per day, and contain discrepancies and omissions as to certain dates.
Based upon all of the above factors, the Court awards attorney fees in the amount of $20,000.00 as being reasonable under the circumstances. Plaintiff is entitled to court costs in the amount of $1,646.09.
Plaintiff also seeks damages as listed in the Public Records Act, including but not limited to up to $100.00 per day for non-compliance. This Court found that St. Tammany arbitrarily withheld the contracts and insurance certificates requested in PRR 5367, entitling plaintiff to any actual damages proven by him to have resulted from the actions of the custodian. Plaintiff failed to introduce any evidence at trial as to actual damages; thus this claim is denied. Further, any such claim would have been limited to damages occasioned by the failure to produce contracts and insurance certificates, which were subsequently produced at trial. In order to be entitled to civil penalties not to exceed one hundred dollars per day, the court must find that the custodian unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32. There has been no such finding; thus plaintiff's claim for civil penalties is denied.
Finally, the Court approves the plan of compliance filed by St. Tammany on September 29, 2016.
THESE REASONS DO NOT CONSTITUTE A WRITTEN JUDGMENT. The Court will prepare a judgment in conformity with these Reasons.
Covington, Louisiana, this 10 day of February, 2017.
/s/
HONORABLE ALLISON H. PENZATO

Jennifer Fruchtnicht wife of/and Craig Rivera were also named as plaintiffs in this mandamus action, but the trial court dismissed their claims, with prejudice, and they are not part of this appeal.

The underlying lawsuit in the 22nd Judicial District Court bears docket number 2015-10649.

Although not part of this appeal, the trial court also granted the Parish's motion for summary judgment as to Ms. Stevens's request for a writ of mandamus ordering the Parish to correct certain parish maps and other records.

"This Chapter shall be known and may be cited as the 'Public Records Law'." LSA-R.S. 44:1.1.

Louisiana Revised Statutes 44:4.1A provides, in pertinent part:
The legislature recognizes that it is essential to the operation of a democratic government that the people be made aware of all exceptions, exemptions, and limitations to the laws pertaining to public records. In order to foster the people's awareness, the legislature declares that all exceptions, exemptions, and limitations to the laws pertaining to public records shall be provided for in this Chapter or the Constitution of Louisiana. Any exception, exemption, and limitation to the laws pertaining to public records not provided for in this Chapter or in the Constitution of Louisiana shall have no effect.

Louisiana Revised Statutes 44:33 provides, in pertinent part:
A. (1) When a request is made for a public record to which the public is entitled, the official, clerks of court and the custodian of notarial records in and for the parish of Orleans excepted, who has responsibility for the record shall have the record segregated from other records under his custody so that the public can reasonably view the record.
(2) If, however, segregating the record would be unreasonably burdensome or expensive, or if the record requested is maintained in a fashion that makes it readily identifiable and renders further segregation unnecessary, the official shall so state in writing and shall state the location of the requested record.
B. (1) If the public record applied for is immediately available, because of its not being in active use at the time of the application, the public record shall be immediately presented to the authorized person applying for it. If the public record applied for is not immediately available, because of its being in active use at the time of the application, the custodian shall promptly certify this in writing to the applicant, and in his certificate shall fix a day and hour within three days, exclusive of Saturdays, Sundays, and legal public holidays, for the exercise of the right granted by this Chapter.

Louisiana Revised Statutes 44:35A provides:
A. Any person who has been denied the right to inspect, copy, reproduce, or obtain a copy or reproduction of a record under the provisions of this Chapter, either by a determination of the custodian or by the passage of five days, exclusive of Saturdays, Sundays, and legal public holidays, from the date of his in-person, written, or electronic request without receiving a determination in writing by the custodian or an estimate of the time reasonably necessary for collection, segregation, redaction, examination, or review of a records request, may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney fees, costs and damages as provided for by this Section, in the district court for the parish in which the office of the custodian is located.

Under the manifest error standard, the appellate court does not decide whether the factfinder was right or wrong; rather it is required to consider the entire record to determine whether a reasonable factual basis exists for the finding, and whether the finding is manifestly erroneous or clearly wrong. Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC, 14-2592 (La. 12/8/15), 193 So.3d 1110, 1116.

Associate counsel for the Parish testified that she offered to provide the contracts to Ms. Stevens in a letter dated February 5, 2015, but gave no explanation as to why they were not produced until May 2015. She also testified that the first time she knew that Ms. Stevens wanted the insurance certificates was in an affidavit filed by Ms. Stevens in September 2015. However, she gave no explanation why the certificates were not produced at that time.

Docket No. 2015-10649.

Docket No. 2015-11327.

Ms. Henton testified that while the front page of the letter states that it is February 4, 2015, the headers of each subsequent page correctly state that it is February 5, 2015. Ms. Henton testified that the letter was sent on February 5, 2015, and it will be referred to herein as the February 5, 2015 letter.

The other requests at issue made on January 20, 2015 were 5335, 5336, and 5338.

Although Attorney General opinions are merely advisory and not binding, the courts of this State have recognized their persuasive authority. City of New Orleans v. Bd. of Directors of Louisiana State Museum, 98-1170 (La. 3/2/99), 739 So.2d 748, 753

Her testimony was proffered via deposition.

Docket No. 2015-10649

Docket No. 2015-11327

As noted previously in these Reasons there was no reservation of the testimony of Mr. Blazek at the time of trial.